[No. 57592-9-I.   Division One.   June 11, 2007.]

*In the Matter of the Marriage of* JOHN E. MUELLER, *Respondent*, and SHAUNA W. MUELLER, *Appellant*.

---

500

*Catherine W. Smith* and *Valerie A. Villacin* (of *Edwards Sieh Smith & Goodfriend, PS*); and *Gordon W. Wilcox*, for appellant.

*Charles K. Wiggins* and *Shelby R. Frost Lemmel* (of *Wiggins & Masters, PLLC*); and *William L. Kinzel* (of *Kinzel, Allen, Skone and Searing, Inc., PS*), for respondent.

¶1 Cox, J. — In Washington, all property acquired during marriage is presumptively community property.[1] Spouses may by contractual agreement change their community property into separate property.[2] However, to recognize any such agreement, our courts have required clear and convincing evidence to overcome the heavy presumption of its character as community property.[3] The name under which the property is held does not determine whether the property is community or separate.[4] Moreover, and subject to limited statutory exceptions, either spouse may manage and control community property with a like power of disposition as the acting spouse has over his or her separate

---

[1] *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995).

[2] *Volz v. Zang*, 113 Wash. 378, 381-84, 194 P. 409 (1920); *Bosone v. Bosone*, 53 Wn. App. 614, 618, 768 P.2d 1022 (1989).

[3] *Kolmorgan v. Schaller*, 51 Wn.2d 94, 98, 316 P.2d 111 (1957).

[4] *Merritt v. Newkirk*, 155 Wash. 517, 520-22, 285 P. 442 (1930).

property.[5] A spouse seeking to enforce an agreement that purports to convert community property into separate property must establish with clear and convincing evidence both (1) the existence of the agreement and (2) that the parties mutually observed the terms of the agreement throughout their marriage.[6]

¶2 Here, John Mueller fails to overcome the presumption that all property acquired during the marriage to Shauna Mueller is community property. We reverse and remand for further proceedings.

¶3 Shauna and John Mueller married in 1983 while both were living in Brazil. At the time, they both held full-time jobs. Although John earned more than Shauna,[7] there was not a wide disparity in their incomes.

¶4 In 1985, their only child, Mark, was born. Shauna took a leave of absence from her job with Citibank to care for their son. It is undisputed, and the trial court found, that in 1986, following the commencement of Shauna's leave of absence, the parties reached an oral agreement "to divide the remainder of [John's] income after the payment of joint expenses."[8]

¶5 The parties dispute the exact circumstances of this discussion. For example, they dispute where the conversation took place, whether Shauna was nursing their son during the conversation, who did what proportion of the talking, and exactly what was said. It is undisputed that they never put the agreement in writing.

¶6 Thereafter, the parties abided by the alleged oral agreement to varying degrees of consistency. The trial court noted in its findings specifically how they observed their oral agreement with respect to division of John's income

---

[5] RCW 26.16.030; *In re Marriage of Schweitzer*, 81 Wn. App. 589, 596-97, 915 P.2d 575 (1996) (citing RCW 26.16.030), *aff'd*, 132 Wn.2d 318, 937 P.2d 1062 (1997).

[6] *Kolmorgan*, 51 Wn.2d at 98.

[7] We use the first names of the parties for clarity.

[8] Finding of Fact 2.7(a).

after payment of joint expenses and Shauna's treatment of charitable donations.

¶7 After 19 years of marriage, and just after retiring, John commenced this dissolution proceeding. He took the position in this proceeding that the 1986 oral agreement in Brazil converted what was presumptively community property to separate property of each party.[9] Shauna disagreed, arguing that the agreement did not have that effect.

¶8 Following a bench trial, the court concluded that the oral agreement changed the character of the property thereafter acquired during marriage to separate property. Based on that characterization, the court divided the property and made other determinations that are at issue on appeal.

¶9 Shauna appeals.

## CHARACTERIZATION OF PROPERTY

¶10 Shauna challenges the division of property on several grounds. First, she contends there was no enforceable oral agreement to change the character of the property the parties acquired during marriage from community to separate. Second, she argues that if the oral agreement was effective to change the character of the parties' property, it should not be enforced because it was not fair. Third, she contends the property division is not fair and equitable, as Washington law requires in property divisions in dissolutions. Fourth, she argues that the trial court erred in considering evidence of John's unilateral intent in construing the agreement. Finally, she challenges several of the trial court's findings of fact.

¶11 We hold that there was no oral agreement changing the presumptive character of the property as community. Thus, we need not reach her other arguments.

¶12 The trial court's characterization of property as community or separate is a question of law that we

---

[9] At oral argument, the parties agreed that this case was argued below and is argued on appeal on the basis that the community property laws of Washington state applied throughout the marriage of the parties.

review de novo.[10] The factual findings supporting the court's characterization require substantial evidence to support them.[11] All property acquired during a marriage is presumed to be community property.[12] The law favors characterization of property as community property unless there is no question of its separate character.[13]

¶13 A spouse may overcome this heavy presumption with clear and convincing evidence of the property's separate character.[14] Simply placing one's own earnings into a bank account in that spouse's name for management purposes is not sufficient to change the legal character from community to separate property.[15] Likewise, one spouse's control over community funds does not change the character of the property.[16]

¶14 Spouses may change the status of their community property to separate property by entering into mutual agreements.[17] These agreements may be oral or written.[18] A spouse seeking to enforce an agreement, whether oral or written, that purports to convert community property into separate property must establish with clear and convincing evidence both (1) the existence of the agreement and (2) that the parties mutually observed the terms of the agreement throughout their marriage.[19] Because oral agreements are more difficult to prove, courts will overturn

---

[10] *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000).

[11] *Id.*

[12] RCW 26.16.030; *Short*, 125 Wn.2d at 870.

[13] *In re Marriage of Brewer*, 137 Wn.2d 756, 766-67, 976 P.2d 102 (1999).

[14] *Kolmorgan*, 51 Wn.2d at 98.

[15] *See Hamlin v. Merlino*, 44 Wn.2d 851, 862, 272 P.2d 125 (1954).

[16] *Schweitzer*, 81 Wn. App. at 596-97 (citing RCW 26.16.030).

[17] *See Union Secs. Co. v. Smith*, 93 Wash. 115, 118-19, 160 P. 304 (1916).

[18] *Id.*; *accord In re Estate of Janssen*, 56 Wn.2d 150, 152-53, 351 P.2d 510 (1960).

[19] *Kolmorgan*, 51 Wn.2d at 98.

an oral property agreement if the parties do not consistently adhere to the agreement during their marriage.[20]

¶15 Courts interpret agreements between spouses like they do other types of contracts.[21] In construing contracts, a court's objective is to determine the parties' mutual intent.[22] Extrinsic evidence may be consulted to elucidate the meaning of the contract's terms but not to contradict the objective manifestations of intent.[23]

¶16 In a spousal agreement case such as this one, where the evidentiary standard is clear and convincing, we uphold the trial court's findings of fact if they are supported by "highly probable" substantial evidence.[24] Reviewing a trial court decision under this standard does not permit us to weigh evidence, which is a trial court function. We merely review the factual findings to determine whether they are properly supported by substantial evidence, and whether they in turn support the legal conclusions.[25]

¶17 Shauna argues that the trial court erred in concluding that the agreement effectively converted community property into separate property. We agree and hold that John has not met his burden to overcome the community property presumption.

¶18 Washington courts have held "on several occasions" that placing one's paycheck into a bank account in that person's own name is insufficient to rebut the presumption that wages earned during a marriage are community property.[26] Likewise, a spouse's physical man-

---

[20] *E.g., State v. Miller*, 32 Wn.2d 149, 201 P.2d 136 (1948).

[21] *See Higgins v. Stafford*, 123 Wn.2d 160, 165, 866 P.2d 31 (1994).

[22] *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990).

[23] *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695, 974 P.2d 836 (1999).

[24] *Schweitzer*, 132 Wn.2d at 329.

[25] *See Bland v. Mentor*, 63 Wn.2d 150, 154, 385 P.2d 727 (1963); *In re Estate of Krappes*, 121 Wn. App. 653, 664-65, 91 P.3d 96 (2004).

[26] *Hamlin*, 44 Wn.2d at 862 (citing *Plath v. Mullins*, 87 Wash. 403, 151 P. 811 (1915)); *accord Beakley v. City of Bremerton*, 5 Wn.2d 670, 674-75, 105 P.2d 40

agement and control over community property is allowed by statute and does not change its legal character.[27] More is required.

¶19 In contrast, the court in *In re Marriage of Dewberry* found clear and convincing evidence of an oral prenuptial agreement to convert each spouse's respective income into that spouse's separate property.[28] There, the terms of the agreement were "clear and simple."[29] One spouse testified regarding the terms, and "several witnesses" also testified knowing specifically about the oral prenuptial agreement.[30] This evidence supported the existence of four specific terms to which both parties had explicitly, orally agreed, including a provision that each party's income would be the separate property of that party.[31] In addition, the court held that the parties "continually affirmed" the agreement with "painstaking and meticulous effort" over the years through their words and actions.[32] Although the husband later denied the agreement, the trial court specifically found the wife's testimony more credible.[33]

¶20 Here, John fails to provide clear and convincing evidence of the first element: the existence of the agreement. He has not proved that the parties agreed to change the legal status of his income from community property to separate property. Rather, he has shown only that they agreed to manage their community income separately.

---

(1940), *overruled on other grounds by Kilcup v. McManus*, 64 Wn.2d 771, 781, 394 P.2d 375 (1964).

[27] *Schweitzer*, 81 Wn. App. at 596-97 (citing RCW 26.16.030). Note, however, that if a spouse does not act for the benefit of the community and does not have the other spouse's express or implied consent, the acting spouse may be separately liable for gifts or obligations. A mere disagreement over management does not give rise to such liability. *See id.* at 597-98.

[28] 115 Wn. App. 351, 62 P.3d 525 (2003).

[29] *Id.* at 362.

[30] *Id.*

[31] *Id.* at 356.

[32] *Id.*

[33] *Id.* at 357, 362.

¶21 The trial court made the following finding of fact:

It is undisputed that in 1986, after [Shauna] stopped working at Citibank, *the parties entered into an oral agreement to divide the remainder of [John's] income after the payment of joint expenses.*("the Agreement["]) The parties concur that the Agreement was intended to reduce fights between the parties regarding money matters.[34]

This finding is supported by the record. No one challenges this finding to the extent of what it says.

¶22 But the trial court's legal conclusion, that this oral agreement to manage funds changed the legal character of the property, does not follow from this finding of fact. Unlike the wife in *Dewberry*, John offered no evidence that Shauna intended to change the legal ownership of the property. He did not mention the legal status of the property in his conversations with Shauna or explain to her that she would be waiving her community interest in his half of the income. There is simply no evidence in the record that this agreement to manage funds separately was any more than an agreement to manage their community property.

¶23 Shauna testified that she understood the agreement was one about management only, as was the case before she took a leave of absence. In contrast, John testified that he thought it effectuated a legal division of the property, although he admitted this term was only "implied."[35] Because the testimony shows that they each objectively manifested different intents, John has not proved a meeting of the minds with regard to the alleged "agreement" he now suggests. Their only objective manifestation of intent was an agreement to divide his income for management purposes.

¶24 It is also significant that the alleged agreement to change the character of the parties' property was not

---

[34] Finding of Fact 2.7(a), Clerk's Papers at 19 (emphasis added).

[35] Report of Proceedings (Sept. 22, 2005) at 145 ("That *to me implied* that the money was hers, she owned it . . . ." (emphasis added)).

reduced to writing. Although a writing is not strictly necessary, some courts have required a writing before finding clear and convincing evidence of an agreement.[36] At one point during the marriage, John's lawyer suggested that he formalize the agreement, but John refused to do so. In any event, the parties' differing recollections of their conversation in forming the alleged agreement undermines John's argument.

¶25 Finally, it is undisputed that the management arrangement was originally intended to last only a couple of years, until Shauna returned to work. This fact undercuts the argument that the parties intended to change the legal ownership of John's income for the duration of the marriage.

¶26 As to the second element—whether the parties adhered to the agreement—the evidence shows that they somewhat consistently managed their money separately throughout the marriage. As the trial court found, each month John gave Shauna a check for one half of his income after he deducted joint expenses. He inconsistently provided her with written conciliation statements. Each party spent their respective share the way each chose. This behavior is consistent with an agreement to separately manage their community property.

¶27 The record also shows that sometimes when Shauna wanted to treat certain expenditures as joint expenses, John disagreed. When that happened, she used her share of the money to make purchases that included things like furnishings for the house and things for their son. These expenses either directly or indirectly benefited the community. So we cannot conclude that the parties consistently adhered to their oral agreement throughout the marriage.[37]

---

[36] See, e.g., In re Marriage of Hurd, 69 Wn. App. 38, 51, 848 P.2d 185 (1993).

[37] See Colagrossi v. Hendrickson, 50 Wn.2d 266, 272, 310 P.2d 1072 (1957) (concluding that expenditures for food, clothing, house payments, and trips were benefits to the community); Miller, 32 Wn.2d at 158 (refusing to uphold an oral agreement to separate property in part because the wife did not adhere to it when

¶28 The fact that both spouses made contributions, gifts, and expenditures without consulting one another does not change the fact that John's income presumptively remained community property. Spouses may each control community property, subject to exceptions that are not at issue here.[38] They may gift community property as long as they have the express or implied consent of the other.[39]

¶29 Whether or not there was such consent in this case for property that was treated as gifts is unclear in this case. In any event, improper treatment of gifts does not, in our view, control the question of whether the presumptive character of property as community property has been overcome.

¶30 In his brief, John makes much of the fact that Shauna ended up with less money than he did because she spent more of her share during the marriage. How that changes the proper characterization of the property as community or separate is unclear to this court.

¶31 Shauna argues that the statute of frauds requires agreements such as the one in this case to be in writing and that as in *Dewberry*,[40] an oral agreement will only be upheld if it meets the part performance exception to that requirement. In light of our disposition of this case, we need not address this issue.

¶32 In sum, John has failed to show the existence of an oral agreement to change the presumptive character of the property as community property.

## SPOUSAL MAINTENANCE

¶33 Shauna assigns error to the trial court's refusal to award her spousal maintenance. We address this issue because it is likely to recur on remand.

---

she made expenditures for her vacations and for the children's expenses, which the court held were benefits to the community).

[38] RCW 26.16.030.

[39] RCW 26.16.030(2).

[40] 115 Wn. App. 351.

■ ¶34 A trial court "may" award maintenance payments in a dissolution proceeding after considering all relevant factors such as need and ability to pay.[41] Maintenance is not a matter of right but is within the sound discretion of the trial court.[42]

■ ¶35 On the facts now before us on appeal, the trial court did not abuse its discretion in declining to award spousal maintenance to Shauna. In lieu of maintenance payments, the trial court elected to award her a lump sum of $496,000 to cover her monthly expenses for five years. This was within its discretion.

¶36 In reaching this conclusion on the record now before us, we offer no opinion on what the trial court may do on remand after it considers the division of property and other issues.

## ATTORNEY FEES

¶37 Shauna seeks attorney fees under RCW 26.09.140 for this appeal. We deny her request.

■ ¶38 RCW 26.09.140 provides that a court "may" award costs and attorney fees for a party's appeal in a dissolution case "after considering the financial resources of both parties." This section requires an inquiry into the moving party's need and the nonmoving party's ability to pay.[43]

¶39 Shauna has filed the required financial declaration to support her request. On careful review of that submission, we decline to award fees.

¶40 We reverse and remand for further proceedings.

AGID and ELLINGTON, JJ., concur.

Reconsideration denied September 12, 2007.

Review denied at 163 Wn.2d 1043 (2008).

---

[41] RCW 26.09.090.

[42] *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).

[43] *In re Marriage of Oblizalo*, 54 Wn. App. 800, 806, 776 P.2d 166 (1989).