# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of<br><br>CURTIS E. CARLSON.<br><br>DONA SEELY, D.D.S.,<br><br>       Petitioner,<br><br>v.<br><br>DAVID WANDS, D.D.S., personal representative of the estate of Curtis E. Carlson<br><br>       Respondent. | No. 78772-1-I<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: October 14, 2019 |

PER CURIAM — Seely seeks discretionary review of the trial court's order granting partial summary judgment in favor of the Estate regarding Seely's interest in a yacht. Review is denied because Seely fails to show probable error warranting review under RAP 2.3(b)(2).

## FACTS

Dr. Dona Seely and Dr. Curtis Carlson married on February 14, 1982. The parties had two children together, and Carlson had one child from a prior marriage.

Seely is an orthodontist, and Carlson was an orthodontist and a periodontist before his death. They maintained separate practices, but shared a floor of an office building they owned together.

In 1991, Seely and Carlson prepared estate planning documents, including a property agreement (1991 Agreement). The 1991 Agreement provided that "all of the property either or both of them now owns or hereafter acquires during their marriage is their community property." The 1991 Agreement provided each party's own practice—and the income derived therefrom—remained his or her own separate property. The 1991 Agreement was signed by both parties and notarized.

In 2006, Seely and Carlson purchased a yacht, Conundrum, for $900,000. The title documents show that the parties held title in the yacht as joint tenants with rights of survivorship.

In February 2012, Seely and Carlson created a new property agreement (2012 Agreement). The 2012 Agreement explicitly states that it supersedes the 1991 Agreement. It listed several items declared to be Seely's separate property, including a condominium, an office building, an investment account, and "the first $1,220,000 value of the parties' boat 'Conundrum.'" The 2012 Agreement specified that the yacht was community property. But, it provided that, upon the death of either party, an additional $610,000 would be credited towards Seely's share of the community property with respect to the yacht:

> The parties intend that the items listed . . . above shall be their community property, but that at the death of the first of them to die, the amounts set forth above will be paid from the community property share of CURTIS E. CARLSON and added to the community property share of DONA M. SEELY, which amounts shall be a lien against the community property share of CURTIS E. CARLSON of such assets.

The 2012 Agreement was signed by both parties. Seely's signature is notarized; Carlson's signature is not.

2

The record also includes a third document, dated August 10, 2013, addressing the characterization of the parties' property (2013 Agreement). The 2013 Agreement comprises five unnumbered, typewritten lists titled as follows: (1) "Community Property of Dr. Curtis E. Carlson & Dr. Dona Seely"; (2) "Assets of Dr. Dona Seely"; (3) "Liabilities of Dr. Dona Seely"; (4) "Assets of Dr. Curtis E. Carlson"; and (5) "Dr. Carlson's Liabilities." The page headed "Assets of Dr. Dona Seely" includes "2006 – Yacht "CONUNDRUM" 67' Regency." Each page of the 2013 Agreement was signed by both parties and notarized.[1]

Seely and Carlson separated on or about December 2, 2013. On December 11, 2013, they each changed the beneficiary designations on their respective individual retirement accounts (IRA). Carlson removed Seely as beneficiary of his IRA and named the Estate of Curtis E. Carlson (Estate) as the sole beneficiary. On January 27, 2014, Carlson filed a petition to dissolve the marriage.

On February 15, 2014, Carlson was admitted to the hospital with complications from lung disease. On March 13, 2014, Carlson signed a form restoring Seely as the beneficiary of his IRA. The next day, he signed a form immediately transferring the contents of his IRA to an account Seely owned. Carlson passed away on March 19, 2014.

Sometime after Carlson's death, Seely was cleaning the home when she found a folder behind a desk in the home office the couple shared. Inside the folder was a draft petition for dissolution. Though the petition was not signed,

---

[1] The record also contains a declaration from the notary who witnessed both Dr. Seely and Dr. Carlson sign the documents.

3

Seely recognized Carlson's handwriting and initials on the document. Under the section marked "Property," the draft petition provides,

> The petitioner's recommendation for the division of property is set forth below.
>
> Each party should be awarded his/her separate property.
> The wife's separate property consists of the following:
> Her professional dental corporation including one-half of the orthodontic equipment and supplies in the office, the Burien office building, located at 15507 Second Avenue S.W., Burien, WA 98166; her condominiums (2) located at 900 Lenora Street #1007, Seattle, WA 98166 and 820 Blanchard # 1507, Seattle, WA 98121, her ING retirement funds, and <u>the yacht "Conundrum"</u> and the Ski Nautique/Correct Craft boat, and the art work she paid for and the furniture she purchased.
> The husband's separate property consists of: his retirement funds, and his professional dental corporation, including all of the periodontal equipment and supplies and one-half of the orthodontic equipment and supplies.
> The community property, consists of: the parties' home located at 16730 Shore Drive N.E., Seattle, WA 98155, and the furnishings therein (except art work or furnishings purchased by the wife); and the Bellevue office building, located at 12148 112th St. N.E., Bellevue, Washington.

(Emphasis added.)

Carlson's will was admitted to probate and Dr. David Wands, a longtime friend of Carlson, was appointed the personal representative. Seely was appointed the administrator over Carlson's community property. Carlson's will explicitly made "no provision herein to benefit my wife, DONA M. SEELY, considering that she is adequately provided for, our marriage having become defunct in my view and our marital community having terminated and a petition for dissolution of our marriage having been prepared."

4

On March 20, 2017, the Estate sued Seely, seeking to declare the documents Carlson signed in the hospital on March 13 and 14, 2014 null and void based on (1) his lack of testamentary capacity to execute the documents, (2) Seely's undue influence, and (3) Seely's financial exploitation.

A bench trial was held over the course of several days in September 2017. Following testimony from 12 witnesses and the admission of 28 exhibits, the court entered 29 pages of findings of fact and conclusions of law. The trial court concluded that Carlson lacked testamentary capacity to execute the March 13 and 14, 2014 documents and that the documents were a result of Seely's undue influence. Specifically, it found,

> Petitioner has established by clear, cogent and convincing evidence that the beneficiary change signed March 13, 2014, and the transfer form signed March 14, 2014, were the result of undue influence by Dr. Seely. As described above, Dr. Carlson was clearly in such a weakened state mentally and physically, that this Court finds he lacked legal capacity. The decedent's "strength of mind is obviously important evidence, bearing directly on the prospect that his or her free will is overcome . . ." In re [Estate of ]Melter, 167 Wn. App. 285, 310[, 273 P.3d 991] (2012). Dr. Seely had substantial participation in effecting the transaction involving the IRA beneficiary change and the funds transfer. The transaction directly contradicts Dr. Carlson's established estate plan to exclude Dr. Seely from assuming his asset. There was no oral agreement created on March 8, 2014 for transfer of the IRA in exchange for the provision of patient services because those terms were not proven, and Dr. Seely's testimony to the contrary lacks credibility.

The trial court removed Seely as the administrator over Carlson's community property.[2]

---

[2] Seely appealed the trial court's September 2017 order, challenging the sufficiency of the evidence supporting the findings. This court affirmed in an unpublished decision, In re Estate of Carlson, No. 77881-1-I, slip op. at 2 (Wash.

On January 17, 2018, a superior court commissioner certified for trial various disputes related to the characterization of the parties' property, including the yacht.

The Estate moved for partial summary judgment on the issue of (1) whether Seely was an "abuser" as defined in chapter 11.84 RCW, and (2) if so, whether she was prohibited from receiving any interest in the yacht and Carlson's share of the joint tenancy in the yacht thus passed to the Estate.

On June 15, 2018, a hearing was held on the Estate's motion. Based on the pleadings and the argument of parties, the trial court found that Seely qualified as an "abuser" as defined in RCW 11.84.010(1).

> I agree that the -- that Dr. Seely does qualify as an abuser under [RCW] 11.84[.010(1)]. Both -- in both fashions that has been suggested by the estate.
>
> One, I think [the September 2014] findings make it clear that she qualifies as an abuser. It is clear that there was harm to Dr. Carlson's estate as of March 14, 2014, upon the -- because it -- the transfer took effect immediately, and that constitutes the exertion of improper control under the language of the statute.
>
> And it is clear that Dr. Seely's actions were willful within the intent of the law.
>
> It is also -- it is appropriate to make that finding based on CR 56. The estate has laid out a prima facie case that -- the basic facts as to how Dr. Seely can be found to be an abuser under the statute, and Dr. Seely has not come forward with any evidence that raises a genuine issue of material fact with regard to her status under the statute.

The court also found that the yacht was a community property asset.

---

Ct. App. August 5, 2019). (unpublished), http://www.courts.wa.gov/opinions/pdf/778811.pdf.

6

Secondly, it is clear that the Conundrum remains a -- either community property asset or joint tenant with right of survivorship asset. It clearly was -- there is a 1991 agreement that -- between the parties making everything community property.

The yacht is acquired in 2006 as joint tenants with right of survivorship. There is no testimony or documents or anything else that reflects a change in the character of the ownership of the asset, and so absent something changing its character, it remains either community property or joint tenants with right of survivorship property, and the effect of the abuser and slayer statute is to provide that half of it passes to Dr. Carlson's estate.

The 2013 agreement doesn't change that, one because it doesn't qualify as a separation contract as Mr. Franklin suggested, because as I look at the statute, [RCW] 26.09.070, it provides for a separation contract that the parties may enter into a written separation contract providing the disposition of any property owned by both or either of them.

This agreement, whatever it is, doesn't provide for the disposition of any property. It simply says -- it is simply the list saying that "this property is -- is," you know, "jointly owned by us and this property is separately owned by these different folks." It has no operative language that would make it a separation contract within the contemplation of RCW 26.09.070.

So the -- you know, there may be some effect that the agreement of 2013 has, and obviously that is something the court can address at trial, but whatever it is, it is not it doesn't affirmatively act -- it doesn't qualify as a separation contract because it doesn't meet the requirements of the statute. It doesn't affirmatively change the status of any property because there is no operative language in it to transfer any interest in the property. All it does is serve as a list of what the parties think their current or you know a list of property.

The trial court issued a written order granting partial summary judgment in favor of the Estate and making the following findings of fact and conclusions of law:

1. Pursuant to RCW 11.84.150(2) and chapter 11.96A RCW, Dona Seely shall be and hereby is determined and declared to be an abuser under RCW 11.84.010.

7

2. Pursuant to RCW 11.84.020, Dona Seely shall not in any way acquire any property or receive any benefit as a result of the death of the Decedent.

3. Pursuant to RCW 11.84.050(1), the Decedent's one-half share of the joint tenancy with right of survivorship in the yacht Conundrum passed to the Estate of Curtis Carlson effective his date of death.

4. The Personal Representative and Dona Seely shall cooperate in marketing and selling the yacht Conundrum and shall divide the net sale proceeds equally, with neither party receiving in excess of 50% of net sale proceeds.

The trial court denied Seely's motion for reconsideration. Seely seeks discretionary review.[3]

## DISCUSSION

Washington strongly disfavors interlocutory review, and it is available only "in those rare instances where the alleged error is reasonably certain and its impact on the trial manifest." Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 462, 232 P.3d 591 (2010). "'Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business." Id. (quoting Maybury v. City of Seattle, 53 Wn.2d 716, 721, 336 P.2d 878, 883 (1959)). This court grants discretionary review only on the four narrow grounds set forth in RAP 2.3(b):

> (1) The superior court has committed an obvious error which would render further proceedings useless;

> (2) The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act;

---

[3] Seely timely filed a notice of discretionary review. RAP 6.2(b) required that she file her motion for discretionary review within 15 days. Respondent notes that Seely's motion was filed on the morning of the 16th day, we exercise our discretion under RAP 18.8(a) and review the merits of the motion.

(3) The superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court; or

(4) The superior court has certified, or all the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

RAP 2.3(b). Seely seeks review under RAP 2.3(b)(2).

This court reviews summary judgment orders de novo, performing the same inquiry as the superior court. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 860, 93 P.3d 108 (2004). This court reviews a trial court's reconsideration decision for an abuse of discretion. Rivers v. Wash. State Conf. of Mason Contractors., 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. In re Estate of Peterson, 102 Wn. App. 456, 462, 9 P.3d 845 (2000).

Seely first argues that the trial court committed probable error in basing its finding that she financially exploited Carlson on the September 2017 finding regarding the transfer of the IRA. Citing RCW 26.16.030, which provides that either spouse, acting alone, "may manage and control community property," Seely argues that "the transfer of community funds from an account managed by one spouse to an account managed by the other spouse can not constitute an 'injury' under RCW 11.84.160."

9

RCW 11.84.020 provides that an "abuser" may not "acquire any property or receive any benefit as the result of the death of the decedent."[4] An "abuser" is defined as "any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful financial exploitation of a vulnerable adult." RCW 11.84.010(1). "Financial exploitation" is "the illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult by any person or entity for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage. RCW 74.34.020(7). The statute provides a non-exclusive list of examples of financial exploitation, including

> [t]he use of deception, intimidation, or <u>undue influence</u> by a person or entity in a position of trust and confidence with a vulnerable adult to obtain or use the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult.

RCW 74.34.020(7)(a) (emphasis added).

Seely appealed the September 2017 findings and this court affirmed in an unpublished opinion, In re Estate of Carlson, No. 77881-1-I, slip op. at 2 (Wash. Ct. App. August 5, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/778811.pdf. In doing so, this court held that sufficient evidence supported the trial court's finding that Dr. Seely exercised undue influence over Dr. Carlson with

---

[4] The statute contains provisions for the distribution of various types of property. Relied upon by the parties here is RCW 11.84.050(1), which provides that "[o]ne-half of any property held by the slayer or abuser and the decedent as joint tenants, joint owners or joint obligees shall pass upon the death of the decedent to his or her estate, and the other half shall pass to his or her estate upon the death of the slayer or abuser, unless the slayer or abuser obtains a separation or severance of the property or a decree granting partition."

10

regard to the IRA. Id. at 20. Our ruling is now law of the case. See State v. Schwab, 134 Wn. App. 635, 644, 141 P.3d 658 (2006) ("[O]nce there is an appellate holding enunciating a principle of law, that holding will be followed in later stages of the same litigation."), aff'd, 163 Wn.2d 664, 185 P.3d 1151 (2008); see also RAP 12.2 ("Upon issuance of the mandate of the appellate court as provided in [RAP] 12.5, the action taken or decision made by the appellate court is effective and binding on the parties to the review and governs all subsequent proceedings in the action in any court."). Undue influence over a vulnerable adult in order to gain control of property constitutes financial exploitation. RCW 74.34.020(7)(a). Accordingly, Seely fails to show that the trial court committed probable error in finding that she was an "abuser" as defined in RCW 11.84.010.

Seely next contends that the trial court committed probable error in finding that the 2013 Agreement did not "reflect[] a change in the character of the ownership of the [yacht]."[5]

This court reviews de novo the characterization of property. In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). All property held in a joint tenancy is presumed to be community property:

> Joint tenancy interests held in the names of both spouses or both domestic partners, whether or not in conjunction with others, are presumed to be their community property, the same as other property held in the name of both spouses or both domestic partners. Any such interest passes to the survivor of the spouse or survivor of the domestic partner as provided for property held in joint tenancy, but in all other respects the interest is treated as community property.

---

[5] Seely does not argue that the trial court erred in failing to consider either the 2012 Agreement or the draft petition for dissolution in making its determination.

RCW 64.28.040(1). Moreover, all property acquired during a marriage is presumed to be community property. RCW 26.16.030; In re Marriage of Mueller, 140 Wn. App. 498, 504, 167 P.3d 568 (2007).

The law favors characterization of property as community property unless there is no question of its separate character. Id. (citing In re Marriage of Brewer, 137 Wn.2d 756, 766-67, 976 P.2d 102 (1999)). "A spouse may overcome this heavy presumption with clear and convincing evidence of the property's separate character." Id. (citing Kolmorgan v. Schaller, 51 Wn.2d 94, 98, 316 P.2d 111 (1957)).

Here, it is undisputed that the parties, at all times, held title to the yacht as joint tenants with rights of survivorship. And, the yacht was acquired by the parties during the marriage. Thus, the question for the trial court was whether the 2013 Agreement was sufficient to overcome this "heavy presumption."

Spouses may change the status of their community property to separate property by entering into mutual agreements. Id.

> Nothing . . . shall prevent both spouses or both domestic partners from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either. But such agreement may be made at any time by both spouses or both domestic partners by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged and certified in the same manner as deeds to real estate are required to be, under the laws of the state.

RCW 26.16.120. A spouse seeking to enforce such an agreement must establish with clear and convincing evidence both (1) the existence of the agreement and

12

(2) that the parties mutually observed the terms of the agreement throughout their marriage. Mueller, 140 Wn. App. at 504.

The 2013 Agreement appears to have been drafted by the parties. While it lists the assets and liabilities of each party, it does not specifically state that each party's assets constitute their separate property. And, it does not indicate that it is intended to revoke or supersede prior agreements. Nor does it in any way purport to convert or sever the joint tenancy. Seely fails to demonstrate that the trial court committed probable error in finding the 2013 Agreement insufficient to overcome the strong presumption that the yacht remained community property at the time of Carlson's death. Discretionary review is not warranted.[6] The motion for discretionary review is denied.

FOR THE COURT:

_____

---

[6] Seely additionally argues that the trial court committed probable error by making a finding on the character of the yacht when it was not asked to do so by the Estate's motion for partial summary judgment. But, the trial court did not make a written finding as to whether the yacht was community or separate property. Rather, the trial court found that the yacht was held in a joint tenancy—all that is necessary for chapter 11.50 RCW to apply.