IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ANDREW WALTER BRUNS,

Appellant,

v.

ANDREA DAWN BRUNS,

Respondent.

No. 86127-1-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Following a dissolution trial, the court entered orders granting Andrea Bruns significantly more residential time than Andrew Bruns without considering mandatory factors under RCW 26.09.187(3), denied Andrew's[1] request—based on existing other child support payments—for a downward deviation in child support without providing specific reasons for the denial; and awarded Andrea spousal support without fully considering RCW 26.09.090 factors. Because the record does not establish that the trial court applied the correct legal standards, we reverse the orders as to residential time, child support, and spousal support. Because Andrew does not otherwise establish that relief is warranted as to his other claims, we affirm in part, reverse in part and remand.

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity.

FACTS

Andrew and Andrea Bruns married in June 2015 and separated in April 2022, the same time Andrew petitioned for dissolution. The parties have one child together, E.B., who was seven at the time of trial. Andrew also has two children from a previous relationship and Andrea has one child from a previous relationship. When Andrew and Andrea married, Andrea became a stay-at-home parent to both the parties' common child and their respective children from previous relationships. During the marriage, Andrew and Andrea purchased a house together in Bothell[2] and a 2019 Subaru Ascent.

Prior to trial, Andrea sought temporary family law orders only as to E.B., including a temporary parenting plan and child support. She claimed Andrew's neglect of their child E.B. was a basis to request RCW 26.09.191 limitations. She requested sole major-decision making authority in all areas except healthcare. She also asked to be E.B.'s custodian and for him to reside with her the majority of the time. Under her proposed residential schedule, Andrew would see E.B. on the weekends every other week and for three hours alternate Thursdays. Andrew filed a response disputing Andrea's allegations and objecting to the entry of temporary orders on the eve of trial. Andrew requested to split the residential schedule, alternating weeks. He agreed to have Andrea designated as the custodial parent solely for the purpose of all state and federal statutes which require a designation or determination of custody. He sought joint decision-making as to all major decisions. Andrew also requested a child support calculation below the standard because he pays child support for his two other children and sought an equal residential schedule.

_____

[2] Prior to the marriage, Andrew bought a different house in Bothell that was awarded to him that is not subject of this appeal.

2

After a hearing where both parties appeared with counsel, a King County Superior Court commissioner, in issuing temporary orders, rejected Andrea's claim that Andrew neglected his parental duties and required the parents to have joint decision-making for all major decisions. The commissioner adopted Andrea's proposed temporary parenting plan and ordered Andrew to pay $4,500 a month in undifferentiated support. In its written order, the court adopted its oral findings stated on the record.[3] In a separate order, the commissioner explained that "the court's oral ruling was to maintain the status quo with respect to the current stipulations between the parties."

Trial began on October 31, 2023, and lasted three days. Andrea proposed generally the same residential schedule that had been adopted in the temporary parenting plan. Andrew proposed equal residential time. During trial, Andrew testified that he earns a salary of $185,000 a year and is eligible for a bonus of up to 20 percent of his annual salary if the company Andrew works for hits their annual goals and pays out a bonus. In the previous two calendar years before trial, Andrew testified that he received a small bonus the first year because he had recently started with that company, then received a "full bonus" the following year. At the time of trial, Andrea was salaried at $50,000 a year as a pre-school director. During trial, Andrew testified that he was requesting a child support obligation lower than the standard calculation if E.B. resides with Andrew for half the time and because Andrew pays child support for two other children.

On November 30 the trial court issued its rulings. In regard to the parenting plan, the court stated:

---

[3] The verbatim report of proceedings from this hearing was not designated in this appeal.

> … I thought about this a great deal. I reviewed my notes considerably in reaching a decision in this case, which is in the best interest of the child. And ultimately, my decision with regard to the Parenting Plan is to maintain the current Parenting Plan that has been in effect since the separation.
>
> I am not making any finding that there was neglect or abandonment on the part of the petitioner as was requested. I am, however, persuaded by the testimony and the context of events to believe that the child will flourish with the mother more.
>
> I do believe the petitioner may be in a place in his life where he is looking perhaps to expand his interests beyond the home. The totality of the evidence before me would suggest that the fact that this was the plan that was implemented, accepted, and carried through since the separation, the fact that there's unrebutted testimony that the petitioner rejected proposals to increase that Parenting Plan during this time, and the fact that there just was never any effort to change that until even the last minute in looking through the docket as the parties have asked me to look at. There was no serious effort at changing that.
>
> Given all of those things, I am keeping the plan as currently set. I think that that provides for the stability of the child, and I think it's what the parties have come to expect works for them for a variety of different reasons.

The residential schedule adopted by the court in the final parenting plan provided the mother 83.3 percent and the father 16.7 percent of the residential time.[4]

As for child support, the court ordered Andrew to pay $1,189.19 per month, without imposing any deviations, because of Andrew's ability to pay and the needs of Andrea and E.B. The court also ordered Andrew to pay $2,000 a month in spousal maintenance to Andrea for 14 months beginning December 1, 2023 and ending with the last payment on January 1, 2025. The court ordered spousal maintenance after considering the "financial abilities of the parties", and that "this was a seven-year marriage in which [Andrea] was the mother who stayed at home, took care of their child, and the other children that are associated with the relationship, and during that time,

---

[4] Calculating the total hours in a four-week span under the adopted residential schedule, E.B. would generally spend 560 hours a month with his mother and 112 hours a month with his father.

[Andrew's] income increased substantially due in part, of course, to [Andrea's] contribution in the home."

The court characterized the Bothell house and the Subaru Ascent as community property and awarded both to Andrea. In discussing the community debt, the court stated, "[t]here is an IRS debt that is listed as undetermined, although it is listed as $6,000 in the spreadsheet that I had." The court's findings and conclusions were presented to the court by Andrea's counsel. Under the listing of community debt, it listed the "IRS Debt" with an amount that was "undetermined." For trial, the parties had stipulated to multiple exhibits, including "Petitioner's Proposed Final Division of Assets & Debts Spreadsheet." Andrew did not designate that spreadsheet to be transmitted to this court. The court assigned the $6,000 IRS debt to Andrew. When the court mentioned the discrepancy between the "undetermined" listing and the spreadsheet before the court, Andrew did not object or raise any concern regarding the $6,000 IRS debt that was assigned to him.[5]

Andrew timely appeals.

DISCUSSION

Residential Schedule

Andrew contends that the record does not support denying his request for an equal residential schedule. A trial court's parenting plan is reviewed for abuse of discretion. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Custody of Halls, 126 Wn. App. 599,

---

[5] Andrea later filed a motion for clarification and reconsideration, which is not at issue in this appeal.

606, 109 P.3d 15 (2005). A decision is manifestly unreasonable if the decision is outside the range of acceptable choices based on the facts and the applicable legal standard. Id.

RCW 26.09.187(3) requires that the trial court consider several factors when establishing a residential schedule. These factors include:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
>
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
>
> (iii) Each parent's past and potential for future performance of parenting functions as defined in []RCW 26.09.004(2),[6] including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
>
> (iv) The emotional needs and developmental level of the child;
>
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
>
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
>
> (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.
>
> Factor (i) shall be given the greatest weight.

RCW 26.09.187(3)(a)(i)-(vii). A trial court must make findings of fact and conclusions of law in support of its decision. Lawrence v. Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001). A trial court's oral decision or statements in the record may supplement inadequate written findings. Id.

---

[6] Former RCW 26.09.004, amended by LAWS OF 2025, ch. 272 § 4, changed subsection (2) to subsection (4).

In the instant case, the trial court did not make written findings of fact related to the required factors under RCW 26.09.187(3) in the final Parenting Plan or the court's written Findings and Conclusions About a Marriage. Nor did it go through these factors in its oral ruling. Rather, the trial court simply stated that it was "not making any finding that there was neglect or abandonment" but that it was "persuaded by the testimony and the context of events to believe that the child will flourish with the mother more." The trial court also stated that Andrew "may be in a place in his life where he is looking perhaps to expand his interests beyond the home" without any explanation as to how that applies to the required factors under RCW 26.09.187(3).

Additionally, the trial court stated that there is "unrebutted testimony that [Andrew] rejected proposals to increase [the temporary parenting plan], and … there just was never any effort to change that until even the last minute." It is not altogether clear what the trial court was referring to. In response to Andrea's motion for a temporary residential schedule, Andrew expressly requested equal time with E.B. The commissioner's written ruling explained that its intent "was to maintain the status quo with respect to the current stipulations between the parties. The court adopted [Andrea's] proposed residential plan …." Without the verbatim report of proceedings from that hearing to establish otherwise, the commissioner's order and the fact it adopted Andrea's proposed residential schedule suggests that, at the hearing, the parties agreed to Andrea's proposed temporary parenting plan. Regardless, Andrew requested equal residential time at trial, and the court was required to consider the evidence presented under the RCW 26.09.187(3) factors, which it failed to do.

Accordingly, the court abused its discretion by not applying the correct legal standard in establishing a residential schedule. The court expressly stated it was "not making any finding that there was neglect or abandonment on the part of [Andrew] as was requested [by Andrea]," so there was no basis under RCW 26.09.191 to place limitations on Andrew's residential time. Yet, the court denied his request for equal time and, instead, adopted a schedule that gave Andrea 83.3 percent of the residential time, leaving Andrew with only 16.7 percent of residential time with E.B. without analyzing all the factors required under RCW 26.09.187(3).

We reverse and remand, requiring the trial court to apply the correct legal standard under RCW 26.09.187(3) and issue findings of fact and conclusions of law to support its determination of a residential schedule in the best interest of E.B.

Andrew also tangentially argues that if he were to receive equal residential time, then (1) he should be designated as the custodial parent, and (2) his child support obligations should be lowered. We address each in turn.

*A. Custodial Parent*

Andrew argues that, because there should be an equal residential schedule, the court "should and could" designate Andrew as E.B.'s "custodial" parent. Under RAP 2.5(a) "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." In his assignments of error, Andrew lists, "[d]esignating [Andrea as the] custodial parent after failing to award equal residential time to the parties despite no basis to decline to adopt an equal residential schedule being articulated in the record." However, Andrew offers no argument or legal authority to support that the court erred in naming Andrea as the custodial parent. Additionally, he fails to cite the record

8

to establish that he requested to be named the custodial parent at trial and was denied that request.

We observe that when Andrew responded to Andrea's request for a temporary parenting plan, Andrew proposed that Andrea should be the custodial parent. Andrew's proposed parenting plan at trial, Exhibit 58, was not designated in the clerk's papers. Nothing in the verbatim report of proceedings or the record supports that Andrew requested to be the custodial parent at trial. We conclude that Andrew waived this claim on appeal.

*B. Lowered Child Support*

Andrew also alleges that, because he should have received an equal residential schedule, RCW 26.19.075(d) permits a downward deviation from the standard calculation of child support predicated on the amount of time exercised under the residential schedule. RCW 26.19.075(d), in relevant part, requires that the court:

> consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.[7]

---

[7] RCW 26.19.075(d) states in full:
The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

We do not address Andrew's arguments based on speculation as to whether the court awards him equal time on remand because we remand the issue of child support for the reasons discussed below.

## Child Support

Andrew argues the trial court should have awarded him a downward deviation in child support based on the child support he pays to children from a previous relationship. RCW 26.19.075(4) provides that child support deviations are discretionary because "[w]hen reasons exist for deviation, the court shall exercise discretion in considering the extent to which the factors would affect the support obligation." Moreover, RCW 26.19.075(2) requires the trial court to provide "specific reasons for deviation" in written findings of fact that are supported by substantial evidence. Specifically, "[t]he court shall enter findings that specify reasons for any deviation or any denial of a party's request for any deviation." RCW 26.19.075(3). Overall, the court must consider "the total circumstances of both households" when determining whether to award a deviation based on child support paid to children from other relationships. RCW 26.19.075(1)(e)(iv).

The trial court did not enter written findings of fact that acknowledged Andrew's other child support obligations or discuss on the record the unrebutted assertion that he has such obligations. Rather, the trial court stated "that there is nothing to warrant deviation" "based on the ability to pay and the need of the mother and the child" and "considerations that I've reviewed with this evidence." The trial court must provide specific reasons for its decision in written findings of fact, supported by substantial evidence, as required under RCW 26.19.075(2). More importantly, the record does not

support that the trial court considered the total circumstances of both households in determining whether to deny Andrew's request to deviate below the standard calculation as required under RCW 26.19.075(1)(e)(iv). Thus, the trial court abused its discretion in its determination of child support.

We reverse and remand, with directions to the trial court to apply the proper legal standard in determining child support based on the evidence presented and make written findings of fact and conclusions of law.

<u>Spousal Maintenance</u>

Andrew contends that the trial court erred in ordering him to pay $2,000 a month in spousal maintenance to Andrea for 14 months. Like parenting plans, the trial court has broad discretion to award spousal maintenance that will not be overturned on appeal unless there is a showing of manifest abuse of discretion. <u>In re Marriage of Wilcox</u>, 3 Wn.3d 507, 517, 553 P.3d 614 (2024). RCW 26.09.090 governs spousal maintenance awards in Washington. The statute requires a trial court to consider a nonexclusive list of relevant factors, including:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>
> (c) The standard of living established during the marriage or domestic partnership;
>
> (d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090(1)(a)-(f). A trial court abuses its discretion when it issues maintenance awards that are not based on a fair consideration of the statutory factors under RCW 26.09.090. Marriage of Wilcox, 3 Wn.3d at 520-21.

In its oral decision, the trial court stated that it was awarding spousal support to Andrea for $2,000 per month after considering the parties' finances, the length of the marriage, the fact that Andrea was a stay-at-home parent during the marriage, and that Andrew's income increased because of Andrea staying home. The trial court only focused on the past in its decision to award spousal maintenance, and did not consider the fact that, at the time of trial, Andrea was employed as a pre-school director. The trial court abused its discretion because it did not fully consider the RCW 26.09.090 factors in awarding spousal maintenance. Accordingly, we reverse and remand for the trial court to apply the proper legal analysis based on the evidence presented at trial. We note that because the income status of the parties may have changed since trial, the trial court is given discretion to allow the parties to submit evidence of their current financial circumstances.

Income Calculation

Andrew alleges that his bonus income should not be included within the calculation of his income because it is out of his control. Under RCW 26.19.071(3)(r), bonuses are considered within monthly gross income when the court determines the child support obligation of each parent. However, RCW 26.19.075(1)(b) states that "[t]he

12

court <u>may</u> deviate from the standard calculation based on a finding that a particular source of income included in the calculation of the basic support obligation is not a recurring source of income." (Emphasis added.) The determination that income is nonrecurring must be based on a review of income received in the previous two calendar years. RCW 26.19.075(1)(b). The trial court has discretion to deviate from the standard calculation of child support. <u>Newell v. Newell</u>, 117 Wn. App. 711, 719 n.18, 72 P.3d 1130 (2003).

In the instant case, the trial court, in its discretion, included Andrew's bonus income into his income calculation for child support. At trial, Andrew testified that he received a bonus the previous two calendar years. Accordingly, the court did not abuse its discretion in including Andrew's bonus in his income calculation.

Characterization and Distribution of Property

*A. Bothell House*

Andrew alleges that the court erred in characterizing the Bothell house as community property. The character of property, whether separate or community, is determined at the date of acquisition. <u>In re Marriage of Kile and Kendall</u>, 186 Wn. App. 864, 875, 347 P.3d 894 (2015). "In Washington all property acquired during marriage is presumptively community property." <u>Dean v. Lehman</u>, 143 Wn.2d 12, 19, 18 P.3d 523 (2001). The party challenging the community property status has the burden of rebutting this presumption that "can be overcome only by clear and convincing proof that the transaction falls within the scope of a separate property exception." <u>Id.</u> at 19-20.

A trial court's characterization of property as separate or community property presents a mixed question of law and fact. <u>Marriage of Kile and Kendall</u>, 186 Wn. App.

at 876 (citing In re Marriage of Martin, 32 Wn. App. 92, 94, 645 P.2d 1148 (1982)). We review the findings of fact supporting the trial court's characterization for substantial evidence. Id. (citing In re Marriage of Mueller, 140 Wn. App. 498, 504, 167 P.3d 568 (2007)). The ultimate characterization of the property as community property or as separate property is a question of law we review de novo. Id. (citing Marriage of Mueller, 140 Wn. App. at 503-04). Because Andrew challenges the trial court's classification of the Bothell house as community property, he is required to prove by clear and convincing evidence that it is separate property.[8]

The Bothell house is presumed community property because it was bought during the marriage. Andrew argues that the Bothell house is separate property because the downpayment of $120,000 came from his father's inheritance and his income prior to the marriage. However, it is undisputed that the mortgage payments for the Bothell house came out of Andrew and Andrea's joint account.[9] Accordingly, we hold that Andrew has not met his burden by clear and convincing evidence that the Bothell house is separate property.

Consequently, we do not consider Andrew's claim that the court erred in awarding the Bothell house to Andrea because his argument is solely based on his claim that the Bothell house is his separate property.

---

[8] We do not consider Andrew's claim that the trial court should have accepted his proposed division of property. He only specifically challenges the characterization of the Bothell house and the Subaru Ascent and does not otherwise offer how the trial court abused its discretion in how it divided the property and assets.

[9] At trial, Andrew did not seek reimbursement for his contribution to the downpayment of the home from separate funds.

*B. 2019 Subaru Ascent*

Andrew next asserts that the trial court erred in characterizing the Subaru Ascent as community property and awarding it to Andrea. The Subaru Ascent is presumed community property because it was bought during the marriage. Dean, 143 Wn.2d at 19. Andrew's rebuttal argument that the Subaru Ascent is separate property states that "[a]lthough [Andrea] claimed that her own separate property car prior to the marriage was also included as portion of the corpus for the purchase of the 2019 Subaru Ascent, the testimony made clear that the bulk of the trade in value was the Mazda CX-9." However, "[a] property distribution need not be equal to be 'just and equitable.'" In re Marriage of Tower, 55 Wn. App. 697, 700, 780 P.2d 863 (1989). Andrew concedes that there was testimony that the trade in for the Subaru Ascent was both based on Andrew and Andrea's separate vehicles. Substantial evidence supports that the Subaru Ascent is community property, and Andrew fails to meet his burden to prove otherwise by clear and convincing evidence, or that the court abused its discretion in awarding the Subaru Ascent to Andrea.

IRS Debt

Andrew argues that the trial court erred in assigning $6,000 in IRS debt to him because the debt is speculative. Additionally, Andrew states, with no authority, that "[i]t is reversible error to predicate a fair and equitable distribution of property, upon calculation of an unknown obligation." Under RAP 2.5(a) "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court."

During the trial court's oral order, it stated, without objection, that "[t]here is an IRS debt that is listed as undetermined, although it is listed as $6,000 in the

spreadsheet that I had." Moreover, the court asked if the parties had any questions when it concluded with the orders and Andrew's attorney said no. We observe that the parties stipulated to admitting at trial the "Petitioner's Proposed Final Division of Assets & Debts Spreadsheet." Andrew did not designate the spreadsheet in the clerk's papers. Regardless, we conclude that Andrew has waived this claim by waiting to raise it for the first time on appeal.

### Attorney Fees

Andrea contends that she should receive attorney fees and costs under RAP 18.9(a) as a frivolous appeal, RAP 14.2 as the substantially prevailing party, and RCW 26.09.140 based on her needs versus Andrew's ability to pay.

RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on review. Under RAP 18.9(a), the appellate court can order a party who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). We resolve all doubt as to whether an appeal is frivolous in favor of the appellant. Id. We conclude that awarding attorney fees based on RAP 18.9(a) is not appropriate because Andrew's appeal is not frivolous.

Generally, the party that substantially prevails on review will be awarded appellate costs. RAP 14.2. We decline to award costs because neither Andrew nor Andrea substantially prevailed on review.

Finally, RCW 26.09.140 allows us to order a party to pay for the reasonable attorney fees and costs incurred by the other party in a marital dissolution. When making this determination, we consider the parties' financial resources as well as the merit of the issues presented on appeal. In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997). To allow this court to consider the financial resources of the parties, RAP 18.1(c) requires that "each party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits." Andrea's RAP 18.1(c) financial declaration indicates that she was laid off from her job in July 2025. Andrew has not filed an affidavit indicating his inability to pay. The record establishes that Andrew is salaried at $185,000, not including his annual bonus of up to 20 percent of his salary. Given this financial disparity, and the fact that we affirm in part and reverse in part, we award Andrea reasonable attorney fees but limit Andrew's obligation based on his proportional share of the parties' current combined income as determined by the trial court on remand.

## CONCLUSION

We affirm the trial court's inclusion of Andrew's bonus as income, characterization of the Bothell house and the 2019 Subaru Ascent as community property and distribution to Andrea, and assignment of the $6,000 IRS debt to Andrew. We reverse the trial court's order of residential time, child support, and spousal support

and remand for the trial court to apply the correct legal standard in making those determinations as well as enter corresponding written findings and conclusions.

_____
Cohen, J.

WE CONCUR:

_____         _____
Feldman, J.                       Smith, J.