[No. 6038–1. Division One. March 5, 1979.]

JAMES GUARD, ET AL, *Plaintiffs,* v. THE TOWN OF FRIDAY HARBOR, *Appellant,* E. V. McGARY ET AL, *Respondents.*

*Welts & Welts* and *David A. Welts,* for appellant.

*McCush, Kingsbury, O'Connor, Ludwigson, Thompson & Hayes* and *John S. Ludwigson,* for respondents.

DORE, J.—A minor girl sued the Town of Friday Harbor and the deputy town marshal for injuries. The jury returned a verdict against both defendants. Cross claims as to which defendant should be obligated to pay such judgment were then litigated pursuant to stipulation in a separate hearing. The trial court denied indemnity to either defendant. The Town of Friday Harbor appeals and McGary cross–appeals.

### ISSUES

1. Whether the Town of Friday Harbor was a passive joint tort–feasor and entitled to indemnity from its agent under the concept of common–law indemnification.

2. Whether the agent McGary was a passive joint tort–feasor and is entitled to indemnity from the Town of Friday Harbor, his employer, under the concept of common–law indemnification.

## FACTS

Defendant McGary was deputy marshal of the Town of Friday Harbor. The town issued McGary a badge and identification card but no other equipment was issued. It was known by the town marshal that McGary had a gun (.38 special) and that he kept it locked in the glove compartment of his automobile. It was also known that McGary occasionally used his own vehicle for police purposes. There was conflicting testimony as to whether McGary was required to have a gun in his possession as deputy marshal.

As deputy marshal, McGary was compensated by the Town of Friday Harbor at the rate of $25 per shift. Although McGary was "more or less" on call 24 hours a day, seven days a week, he was not required to come on duty if he wished to decline.

The incident out of which this lawsuit arose occurred on January 28, 1975. On that day, Kerri Guard, a 7-year-old girl, was watching a basketball game in Friday Harbor. She was standing on a rock outside the gymnasium looking through a window at the game. At that time and place Brian James, the defendant McGary's 4 1/2-year-old grandson, came up behind Kerri with a gun (which turned out to be McGary's .38 special), and said "I shoot you, Kerri." Brian fired the weapon and the bullet entered Kerri's back and exited her abdomen, entering the gymnasium and falling to the floor inside. Miraculously no vital organs were damaged although her liver was pierced. A suit was brought against both the Town of Friday Harbor and McGary, and a judgment for damages in the amount of $10,000 was entered. The judgment was paid by the Town of Friday Harbor, which now seeks common-law indemnification against McGary on the theory that the town was a passive joint tort-feasor.

It was agreed by both parties that the trial judge could use the testimony in the personal injury trial (San Juan County, Cause No. 3212), in making his determination of indemnity. The court found both joint tort-feasors actively negligent, and denied indemnity to both.

DECISION

ISSUE 1: Passive Negligence of Town of Friday Harbor

■ In the subject case the Town of Friday Harbor seeks relief under the concept of common–law indemnity. *Rufener v. Scott,* 46 Wn.2d 240, 280 P.2d 253 (1955). Common–law indemnity is a recognized limited exception to the general rule in Washington which otherwise prohibits contribution among joint tort–feasors. This general rule has recently been affirmed in *Wenatchee Wenoka Growers Ass'n. v. Krack Corp.,* 89 Wn.2d 847, 576 P.2d 388 (1978), wherein the court held that the rule prohibiting claims for contribution among joint tort–feasors remains the law in Washington and prohibits claims of contribution between ordinary tort–feasors and persons liable under the no–fault concept of strict liability. Parties have been recognized as being in pari delicto and, therefore, indemnity will not be allowed when "each of the tort–feasors' acts although independent concur in establishing the basis for the actual liability". *Northwestern Mut. Ins. Co. v. Stromme,* 4 Wn. App. 85, 89, 479 P.2d 554 (1971). Therefore, in order to establish a right to indemnity, the party seeking indemnity (indemnitee) must establish (1) a breach of a duty causing the plaintiff's injuries by the person against whom indemnity is sought (indemnitor), and (2) the person seeking indemnity must not have been an active participant in the acts which caused injury, *i.e.,* the indemnitee must not have been in pari delicto with the indemnitor.

In *Rufener v. Scott, supra,* the court set forth the law wherein one joint tort–feasor could receive contribution from the other joint tort–feasor. Our Supreme Court in *Rufener* stated at pages 242–43:

It is the general rule that there is no right of indemnity between joint tort–feasors. *Duncan v. Judge,* 43 Wn.(2d) 836, 264 P.(2d) 865. However, if the tort–feasors are not *in pari delicto,* and the negligence of one is primary or active, and the negligence of the other is passive, resulting in injury to a third person, and the one guilty of passive negligence is required to answer in damages to the

third person, he is entitled to indemnity from the wrong-doer guilty of primary negligence. For example, A sells defective equipment to B, and B, without knowledge of the defect, injures C by the use of the equipment. B is liable in damages to C because he has injured him, but B is entitled to indemnity from A. The rule is stated in 27 Am. Jur. 467, Indemnity, § 18:

"But the operation of this rule against recourse is greatly circumscribed, with the result that one constructively liable for a tort is generally held entitled to indemnity from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute or by rule of the common law, and irrespective of the existence of an express contract to indemnify. Accordingly, it has been stated that a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter, whether contractual relations exist between them or not. In this connection it has been observed that where one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage, the rule denying contribution or indemnity between joint tort–feasors does not apply, the parties not being in pari delicto as to each other, though either may be held liable as to third persons."

*See, also, Alaska S. S. Co. v. Pacific Coast Gypsum Co.,* 78 Wash. 247, 138 Pac. 875.

*Daggett v. Tiffany,* 2 Wn. App. 309, 467 P.2d 629 (1970), was an attractive nuisance case wherein the decedent was a 5–year 10–month–old boy. In that case a motor weighing 400 to 500 pounds was placed on a trailer behind a barn in such a way that the rear end of the trailer rose about 3 or 4 feet. The children were attracted to play on the trailer causing the trailer to shift and rolling the engine off the trailer and onto the decedent. Plaintiffs brought an action not only against the tenants but also the owners of the land. The landowners contended that in order for them to be held liable for the death of the minor boy, it would be necessary that they, as owners or occupiers of the land, have notice or knowledge of the existence of the dangerous

condition or instrumentality. The court agreed, and on pages 313–14 reasoned that:

Defendants, Edwin and Margaret Tiffany, assert the trial court erred in failing to determine as a matter of law that even if the attractive nuisance doctrine applied, it would have no application to them. In order to be held liable for the death of Tony, they urge it is necessary that they as owners or occupiers of the land have notice or knowledge of the existence of the dangerous condition or instrumentality. It is contended the evidence failed to show such knowledge. We agree.

The criterion for imposing a duty of care has been stated as follows:

". . .*the duty to use care is predicated upon knowledge of danger,* and the care which must be used in any particular situation is in proportion to the actor's knowledge, actual or imputed, of the danger to another in the act to be performed [or in the failure to perform an act]. . . ." *Leek v. Tacoma Baseball Club,* 38 Wn.(2d) 362, 229 P.(2d) 329.

(Italics ours.) *Mills v. Orcas Power & Light Co.,* 56 Wn.2d 807, 355 P.2d 781 (1960).

W. Prosser, Torts § 59 (3d ed. 1964) states:

The condition must be one which the occupier should recognize as involving an unreasonable risk of harm to such children. Again he must know of the condition, or have reason to know of it; and no case has ever held that, in the absence of any notice that something may be wrong, he is required to inspect his land, or otherwise investigate, to discover whether there is any condition on it which might harm trespassing children.

Although there are a number of Washington cases wherein joint tort–feasors have sought indemnity, this is the first case in this jurisdiction where the two joint tort–feasors are principal and agent, and the principal seeks indemnity against the agent based on the fact that the agent was actively negligent as opposed to the principal's passive negligence.

Restatement (Second) of Agency § 401, comment *d* (1957) provides at pages 239–40:

*d. Subjecting principal to suit by third persons.* Unless he has been authorized to act in the manner in which he acts, the agent who subjects his principal to liability because of a negligent or other wrongful act is subject to liability to the principal for the loss which results therefrom. This includes the payment of damages by the principal to the third person, or of a fine to the state in case of a crime. *Thus, a servant who, while acting within the scope of employment, negligently injures a third person, although personally liable to such person, is also subject to liability to the principal if the principal is thereby required to pay damages.* See the Restatement of Restitution, § 96. If suit is brought against a principal alone, the principal, under the provisions of some modern statutes, can cause the agent to be made a party, or he can notify the agent to defend the suit with the consequences stated in Comment *h* on Section 399.

If the principal authorizes a tort, either advertently or inadvertently, he cannot recover for harm resulting to him from it. Hence, if the principal directs the agent to do an act which, to the knowledge of the agent, is either tortious or criminal, the agent is subject to no liability to the principal, unless he should realize that the principal is mistaken and believes the act to be a lawful one, in which case the agent would not be authorized to perform it.

*Where the negligence of both principal and agent combine in causing loss to a third person, the principal has a right to contribution in states in which this is permitted between tortfeasors. Under some circumstances, although both are negligent, the principal may have a right to indemnity.*

(Italics ours.)

Restatement of Restitution § 87, *Vicarious Liability* (1937), provides:

*Where an agent has committed a tort for which, because of the agency relation, his principal is liable, the principal's rights and liabilities with respect to restitution because of a payment in discharge of the liability are the same as if he had acted personally, except*

(a) *in an action between himself and the agent,* and

(Italics ours.)

Restatement of Restitution § 96, *Person Responsible for Conduct of Another* (1937), provides:

A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.

*Comment:*

*a.* Although it is not within the scope of the Restatement of this Subject to state the rules and statutes by which a person becomes responsible for the misconduct of another, certain well–defined situations to which the rule stated in this Section applies can be enumerated.

The situations to which the rule most frequently applies are those in which a person is made responsible for the conduct of another who is engaged in conducting matters on his account. *Thus the rule applies to require a servant or other agent to indemnify his master or principal who has· paid damages to a third person injured by the unauthorized tort of the servant or other agent,* under the rules stated in the Restatement of Agency, §§ 219–267.

(Italics ours.)

■ As the State of Washington permits common–law indemnification between two joint tort–feasors provided they are not in pari delicto, the Town of Friday Harbor, the principal herein, would be entitled to indemnity providing it was not actively negligent in causing plaintiff's injuries. Both the principal and agent, the Town of Friday Harbor and Deputy Marshal McGary, withdrew the issue of common–law indemnification from the jury case, agreeing to a second hearing at the conclusion of the jury trial to determine the issue of indemnification. So we need not concern ourselves whether the jury's verdict against both defendants would be res judicata as to the issue of active or passive negligence of either party.

The trial judge then conducted a second hearing, limited to evidence produced during the first trial. The trial judge

found that the Town of Friday Harbor was actively negligent in not providing police training for their police deputies and in particular to Deputy McGary, and that this lack of training was the proximate and/or concurring cause which resulted in the unfortunate shooting of the minor girl. We set forth below those findings of fact and conclusions of law which we believe are pertinent.

Finding of fact No. 7:

. . .

B. The Town of Friday Harbor expected the Defendant McGary to be available as an on–call Deputy Town Marshall unless the Defendant McGary indicated otherwise.

C. The Town provided no training as to police duties, and the Town was aware that McGary carried his own gun locked in the glove box of his vehicle and used his own vehicle for police pursuits and the Town utilized his services on many occasions.

Conclusion of law No. 1:

The Defendant McGary was the agent of the Town of Friday Harbor at the time of the incident here in question, and is liable to the Plaintiff under the doctrine of respondeat superior.

Conclusion of law No. 2:

The Town of Friday Harbor was negligent and is not entitled to indemnity from the co–Defendant McGary, and likewise defendant, McGary, is not entitled to indemnity from the defendant, Town of Friday Harbor, by virtue of his relationship with the Town of Friday Harbor.

We are not authorized to substitute our findings for that of the trial court. *Thorndike v. Hesperian Orchards,* 54 Wn.2d 570, 343 P.2d 183 (1959). However, a finding of fact which is without any support in the record cannot stand. *Worthington v. Worthington,* 73 Wn.2d 759, 765, 440 P.2d 478 (1968).

The only issue is whether or not there is sufficient evidence in the record to substantiate the court's finding of fact No. 7(C) which provided "The Town provided no

training as to police duties, and the Town was aware that McGary carried his own gun locked in the glove box of his vehicle and used his own vehicle for police pursuits and the Town utilized his services on many occasions." There was no testimony or evidence in the record indicating what this training consisted of, and how it would have prevented the accident from happening or would have assisted defendant McGary in safeguarding the storage of his loaded weapon.

The record indicates that Deputy Marshal McGary previously had had 5 years' experience as a Deputy Sheriff in San Juan County, and 26 months' experience as a Deputy Marshal in the Town of Friday Harbor. Clearly he was an experienced law enforcement officer and had a permit to carry a gun. McGary needed a gun to carry out his duties as deputy marshal and as a routine he kept it locked in the glove compartment of his automobile. There was no testimony of what additional instructions the Town of Friday Harbor might have given as to the care and maintenance of McGary's gun, other than to keep it locked in his vehicle, which he did. There is nothing in the record to indicate a superior method of safeguarding his firearm. The jury found it was negligence for Deputy McGary to put the key, with which he locked and unlocked the glove compartment of his car, on the same key ring that he used in his car ignition. However, there is no evidence that the Town of Friday Harbor knew that McGary was doing that, and in the absence of some evidence that they had such knowledge and failed to take steps to properly instruct or prevent the deputy marshal from putting the key of his glove compartment with his ignition keys, we cannot speculate that the town violated a standard of due care which makes it an active or joint concurring cause of the accident. The fact is that the sole cause of the accident was Deputy McGary's leaving his keys in an unattended vehicle which turned out to be an attraction to his grandson.

We can find no evidence in this record or any inferences therefrom which would establish the active negligence of the Town of Friday Harbor. As the Town of Friday Harbor

is a passive joint tort–feasor, we hold it is entitled to indemnity from the active tort–feasor McGary.

ISSUE 2: McGary's Active Negligence

■ We find that the record shows that McGary was guilty of active negligence in causing the accident by leaving a loaded gun in his unlocked vehicle wherein it constituted an attractive nuisance to minor children. Consequently McGary is not entitled to any indemnity against his joint tort–feasor, the Town of Friday Harbor.

Reversed with judgment to be entered for the Town of Friday Harbor against McGary in the amount of $10,000.

SWANSON and WILLIAMS, JJ., concur.