# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Domestic Partnership of:<br><br>JEAN M. WALSH,<br><br>                Appellant/Cross-Respondent,<br><br>   and<br><br>KATHRYN L. REYNOLDS,<br><br>             Respondent/Cross-Appellant. | No. 57522-1-II<br><br><br>ORDER GRANTING<br>MOTION FOR RECONSIDERATION OF<br>AWARD OF ATTORNEY FEES IN PART<br>AND AMENDING OPINION |

Appellant/cross-respondent, Jean M. Walsh, moves this court to reconsider its August 27, 2024 unpublished opinion. Pursuant to our request, respondent/cross-appellant, Kathryn L. Reynolds, answered the motion. After consideration, we grant reconsideration in part, amend the opinion as follows, but otherwise deny appellant/cross-respondent's motion.

The last complete sentence of the last paragraph on page 28 that reads:

Because Reynolds prevails on appeal, we grant her attorney fees and costs relating to responding to Walsh's appeal.

is deleted and replaced with the following:

Because Reynolds prevails on appeal, and given the parties' relative financial resources, pursuant to RCW 26.09.140, we grant her attorney fees and costs related to responding to Walsh's appeal.

No. 57522-1-II

It is **SO ORDERED.**

_____
Che, J.

We concur:

_____
Maxa, J.

_____
Veljacic, A.C.J.

2

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Domestic Partnership of: | No. 57522-1-II |
| JEAN M. WALSH, | |
| Appellant/Cross-Respondent, | |
| and | UNPUBLISHED OPINION |
| KATHRYN L. REYNOLDS, | |
| Respondent/Cross-Appellant. | |

CHE, J. — Jean Walsh appeals the trial court's division of property as a result of their domestic partnership dissolution. Kathryn Reynolds cross-appeals the trial court's valuation decisions. This is the third appeal arising out of the dissolution of Walsh and Reynold's domestic partnership. In the most recent appeal, the court remanded for the trial court to, among other things, apply the community-like property presumption to the property acquired during the committed intimate relationship, characterize the parties' property as community-like or separate by, in part, considering whether the parties had a separate property agreement, and distribute the property accordingly.

On remand, the trial court found that Walsh failed to prove by clear and convincing evidence that an oral separate property agreement existed. The trial court characterized the parties' property as separate or community-like and determined the parties' share of the property. The parties presented experts who had differing opinions on the present value of the parties'

property. The trial court valued the property based on the opinion of Walsh's expert. Walsh appeals, arguing that (1) the trial court violated the law of the case in a myriad of different ways, (2) the trial court erred in determining that Walsh failed to prove a separate property contract, and (3) Reynolds should have been judicially estopped from taking various positions that Reynolds took on remand. Reynolds cross-appeals, arguing the trial court erred in its valuation decisions.

We hold the law of the case established that only property characterized as community-like is subject to distribution if that property was acquired during the committed intimate relationship. The trial court's legal conclusions to the contrary are erroneous. But such conclusions are harmless because the trial court did not distribute any separate property. The parties' other arguments fail. We affirm. Because Reynolds prevails on appeal, we grant her attorney fees and costs on appeal for responding to Walsh's appeal, but not attorney fees related to her cross appeal.

## FACTS

In 1988, Jean Walsh, while working as an orthopedic surgeon, met Kathryn Reynolds in California. *In re Domestic P'ship of Walsh*, No. 51125-8-II, slip op. at 2 (Wash. Ct. App. June 25, 2019) (unpublished) (*Walsh* II), https://www.courts.wa.gov/opinions/pdf/D2%2051125-8-II%20Unpublished%20Opinion.pdf. After a few months of dating, Reynolds moved into Walsh's home. *Id*. During this time, Walsh had a SEP-IRA account that was eventually consolidated with other funds into a USAA SEP Account.

Walsh worked as a doctor while Reynolds maintained the home. *Id.* Walsh compensated Reynolds for the house work. *Id.* The two maintained separate finances during their relationship. *Id.*

Between 1992-96, Walsh gave birth to three children. *Id.* at 2-3. Walsh and Reynolds raised them together and Reynolds adopted each of the children. In 2000, Walsh and Reynolds registered as domestic partners in California. *Id.* That same year, Walsh sold her California home and purchased one in Tacoma, Washington, where she began working as an orthopedic surgeon in 2000. *Id.* at 4. Walsh "was able to trace all deposits made to her USAA SEP IRA to dates pre-dating the California registered domestic partnership." Clerks Papers (CP) at 599.

In 2003, Walsh sold the Tacoma home and brought a house in Federal Way, Washington. *Walsh* II, slip op. at 4. The parties "both signed the deed but Walsh took out a mortgage solely in her name." *Id.* "In August 2009, Walsh and Reynolds registered as domestic partners in Washington. The parties separated seven months later on March 14, 2010. Walsh petitioned for dissolution on March 11, 2011." *Id.* at 5.

In the initial proceeding, the trial court determined "that the parties lived in a committed intimate relationship from January 1, 2005 to August 20, 2009 when they registered as domestic partners under Washington's Domestic Partnership Act, chapter 26.60 RCW." *Id.* (footnote omitted). The court chose the 2005 date because that is the year California amended its domestic partnership statute "expanding legal protections related to property available to married couples to domestic partnerships." *Id.*

3

"The court also found that the couple intended to maintain separate assets and liabilities except for the Federal Way property and a van." *Id*. To that end, the court ruled that the parties had both separate and community-like interests in the Federal Way house.

> The trial court also (1) found that the parties owned the Federal Way residence as tenants in common; (2) ordered the residence sold; (3) awarded Walsh an initial $40,834.42 from the sale of the house for mortgage payments on the home before January 1, 2005; and (4) divided the remaining proceeds 51.89 percent to Walsh and 48.11 percent to Reynolds.

*In re Domestic P'ship of Walsh*, 183 Wn. App. 830, 839-40, 335 P.3d 984 (2014) (footnote omitted) (*Walsh* I). And "[t]he trial court also awarded Walsh $180,000 from her father's contributions and $30,000 from inherited funds used to pay down the mortgage before Walsh and Reynolds separated on March 2010." *Id*. at 840 n.6. The trial court also ruled that Walsh's USAA SEP IRA was her separate property.

## I. *WALSH* I AND THE FIRST REMAND

On appeal, the appellate court affirmed that the parties had lived in a committed intimate relationship prior to registering as domestic partners in Washington, but it reversed and remanded the matter because the trial court "should have extended application of the 'equity relationship' doctrine to the parties' relationship before 2005, including their registered domestic partnership under California's act, an unimpeachable indicator of the intended nature of their relationship." *Id*. at 848. The court also held that the trial court did not abuse its broad discretion in dividing the value of the parties' nonseparate properties, including the Federal Way property, as the division was just and equitable based on the needs and contributions of the parties. *Id*. at 855.

4

The court remanded for the trial court "(1) to reconsider whether the parties had a common law 'equity relationship' before January 1, 2005; and (2) if so, to redistribute the parties' community assets accordingly." *Id.* at 859.

On remand, the trial court "found that the parties did not form a committed intimate relationship prior to 2005 and declined to revise its previous distribution of their assets, despite this court's opinion." *Walsh* II, slip op. at 7. Of note, the trial court also "found that even if the parties were in a committed intimate relationship that began in 1988, 'there is clear, cogent and convincing evidence that [they] agreed to the characterization of all property acquired during their relationship' as separate property, through something akin to an oral prenuptial agreement." *Id.* at 8 (alteration in original). The trial court also found that "The parties clearly intended to maintain separate assets and liabilities, with limited exceptions such as the Federal Way property and the Sprinter Van."[1] CP at 633.

Relatedly, the trial court determined that the parties did not intend to create community-like property prior to 2005. *Walsh* II, slip op. at 8.

## II. *WALSH* II

On appeal, the appellate court held "that the trial court erred when it failed to follow the law of the case and when it declined to find a committed intimate relationship existed prior to 2005." *Id.* at 1. It also held that the trial court erred by "conflating the issue of whether and when a committed intimate relationship existed with the issue of the proper characterization of

---

[1] In *Walsh* II, the court noted that the first trial court's finding that "the parties intended to live together as a family but maintain separate assets and liabilities, with limited exceptions such as the Federal Way property and one family car" was supported by substantial evidence as we held in *Walsh* I., slip op. at 20.

the parties' property as separate or community-like, and there is no constitutional barrier to finding a committed intimate relationship prior to 2005." *Id*.

The appellate court expressly held that, even if the parties were in a committed intimate relationship that began in 1988 and intended to keep their property separate through something like an oral prenuptial agreement, this was not an independent basis for upholding the trial court's distribution. *Id*. at 28-29. The court reasoned that it "cannot affirm the trial court's finding that the parties' property remains separate without proper application of the presumption in favor of community-like property acquired during the committed intimate relationship." *Id*. at 29-30.

The court remanded with the following instructions:

> for a different trial judge to enter findings consistent with the law of the case and the committed intimate relationship doctrine as articulated in this opinion. The trial court must determine when, prior to 2005, the committed intimate relationship began in accordance with our prior decision. The trial court must apply the presumption that all property acquired during the committed intimate relationship is community-like. The court must then characterize the parties' property as either community-like or separate by applying that presumption and *by considering whether the parties had an agreement to maintain separate property*. The trial court must do so with the understanding that there is no constitutional barrier to applying the presumption to community-like property acquired during the committed intimate relationship. The trial court must then distribute the property accordingly.

*Id*. at 1-2 (emphasis added).

### III. REMAND FOLLOWING *WALSH* II

The trial court bifurcated the proceedings: first, the court determined the start date of the committed intimate relationship, and second, the court decided the character and proper distribution of the property. In September 2021, the trial court determined that the committed intimate relationship began upon the parties' cohabitation in November 1, 1988. Walsh

presented evidence to show the existence of an oral separate property agreement to overcome the community-like property presumption.

In April 2022, the trial court ruled that Walsh failed to prove that there was a mutual agreement to keep their property separate.[2] The trial court recognized that (1) the parties maintained separate financial accounts; (2) Walsh paid for the following out of her income: the mortgage, taxes, insurance, and private school tuition; and (3) Walsh treated Reynolds as her employee, paying her a salary for certain services. But the court explained that merely because the parties kept their property separate does not prove that the parties had an agreement to keep their property separate, concluding that such reasoning was circular. Additionally, the trial court pointed out that certain parts of the parties' behavior to maintain separate assets—like that Walsh treated Reynolds like an employee who is paid a salary to perform household duties and that Reynolds filed income taxes claiming the money Walsh paid her as income—benefited only Walsh for tax purposes.

The trial court also emphasized that "Walsh's unilateral control over her earnings by depositing them in accounts in her name only, paying the parties' shared expenses, and even paying Reynolds a 'salary' for keeping up the family home, is not clear and convincing evidence that the parties entered into a separate property agreement." CP at 528. Finally, the trial court pointed out, "While Reynolds' yield of any control over what would otherwise be community-like property may show her intent that Walsh handle all of the finances while Reynolds

---

[2] The trial court heard testimony from the parties before making this determination. Walsh testified that she and Reynolds orally discussed how they would share property before moving in together. Walsh testified that she "said 'Well, how about we keep it simple. If I buy it, it's mine. If you buy it, it's yours. And we keep things separate.'" Rep. of Proc. (RP) at 78. Reynolds denied having such a conversation.

maintained the home and cared for the children, it does not show an intent to transform the character of property that would otherwise be community-like property [or] separate property." CP at 528. Finally, the trial court ruled that even if a separate property agreement existed, it would be unenforceable for being neither substantively nor procedurally fair.

In August 2022, the trial court entered findings and conclusions about a registered domestic partnership (F&C-RDP). The trial court categorized the parties' property as community-like and separate. It determined that portions of the USAA SEP IRA and the USAA investment account were separate property, and that the money Reynolds inherited from a family trust were separate property. However, the trial court determined that all the property—even separate property—was subject to distribution because this case arose from the dissolution of a domestic partnership. The trial court further ruled, "even if the parties had a separate property agreement, and it was enforceable, this Court's property division, as set forth in the decree entered herewith, would remain the same, even if it were to result in awarding Walsh's separate property to Reynolds" because its distribution was just and equitable. CP at 529.

Walsh moved for reconsideration of certain findings of fact and conclusions of law in the August 2022 F&C-RDP. The trial court granted the motion in part. In October 2022, the trial court granted the reconsideration motion in part, determining the Federal Way property produced $476,835.89 in community-like property and $142,270.53 in Walsh's separate property based upon her payments to the principal mortgage balance following the parties' separation. The trial court then awarded Walsh 50 percent of the remaining net sale proceeds.

8

In December 2022, the trial court entered a distribution order, which determined the present value of the parties' interest in the aforementioned assets based on expert testimony presented by the parties.

## IV. CHALLENGED DISTRIBUTIONS

In 2012, the trial court awarded Reynolds 50 percent of the GHP Pension and the 401k salary deferral plan—$163,064.39—accumulated from January 1, 2005 to March 14, 2010. The trial court determined that Walsh was entitled to 100 percent of the GHP Pension and 401k salary deferral plan accumulated prior to January 1, 2005 and after March 14, 2010, appearing to conclude that such property was separate.

In 2017, the trial court issued a qualified domestic relations order (QDRO) transferring the aforementioned award, which had appreciated to $244,083, to Reynolds. In 2022, the trial court redetermined that the parties had $471,656.68 of community-like property interest in the GHP Pension and the 401k salary deferral plan and awarded Reynolds 50 percent of that interest.

Walsh's expert Kessler relied on the 2012 decree of dissolution valuation of Reynolds' community-like interest from the GHP Pension and 401k salary deferral plan. Reynolds argues that this reliance was the central issue with Kessler's calculation; Reynolds asserts that Kessler should have determined that Reynold's community-like property interest was half of $471,656— the amount from the 2022 F&C-RDP. But the trial court agreed with Kessler, determining that the award from the QDRO plus an additional $15,050 to Reynolds would give her 50 percent of the community-like property interest in the GHP Pension and the 401k salary deferral plan.[3]

---

[3] Reynolds' expert Sarah Hussey produced her own present value determinations. For example, Hussey concluded that the present value of Reynolds' remaining interest in the GHP Pension and the 401k salary deferral plan was between $142,873 and $172,640.

9

In 2012, the trial court determined the value of the USAA Investment Account was $500,890.72 as of the parties' separation. In 2012, the trial court awarded Reynolds $43,046 in that asset. In 2022, the trial court redetermined that the parties had a $410,891 community-like interest in that asset and that Reynolds was entitled to 50 percent of that asset. The trial court then awarded Reynolds, based on Kessler's calculations, an additional $77,756. The court concluded that the $77,756 award plus the amount previously awarded to her constituted 50 percent of the $410,891 in community-like interest in the asset.

Reynolds moved for reconsideration of the distribution order, which the trial court denied. Walsh appeals (1) the April 2022 order finding that Walsh failed to prove that there was a mutual agreement to keep their property separate, (2) the August 2022 F&C-RDP characterizing the parties' property, (3) the October 2022 reconsideration order. Reynolds appeals the trial court's valuation of the parties' property.

## ANALYSIS

### I. LAW OF THE CASE

"'The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal.'" *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 56, 366 P.3d 1246 (2015) (internal quotation marks omitted) (quoting *Arceneaux v. Amstar Corp.*, 66 So. 3d 438, 448 (La. 2011)). This law of the case "'forbids, among other things, a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case.'" *Id.* (internal quotation marks omitted) (quoting

*Mun. of San Juan v. Rullan*, 318 F.3d 26, 29 (1st Cir. 2003)). "The doctrine does not apply to factual findings."[4] *Pac. Coast Shredding, LLC v. Port of Vancouver*, 14 Wn. App. 2d 484, 503, 471 P.3d 934 (2020).

The trial court "may exercise discretion where an appellate court directs it to 'consider' an issue," provided it adheres to the appellate court's instructions. *In re Marriage of McCausland*, 129 Wn. App. 390, 399, 118 P.3d 944 (2005), *rev'd on other grounds*, 159 Wn.2d 607 (2007) (quoting *State ex. rel. Smith v. Superior Court for Cowlitz County*, 71 Wash. 354, 357, 128 P. 648 (1912)). "[T]he trial court cannot ignore the appellate court's specific holdings and directions on remand." *Bank of Am., NA v. Owens*, 177 Wn. App. 181, 189, 311 P.3d 594 (2013). We may deviate from our determination on a question of law in an earlier appeal if the prior determination "was clearly erroneous and, if so, whether the erroneous decision works a manifest injustice to one party." *Morpho Detection, Inc. v. Dep't of Revenue*, 8 Wn. App. 2d 672, 683, 440 P.3d 1009 (2019).

A.      *The Trial Court Characterized the Parties' Property as Either Community-Like or Separate*

Walsh argues that the trial court failed to comply with our mandate by not characterizing the parties' property as either community-like or separate. Because the trial court did engage in such characterization, we disagree.

---

[4] Walsh asserts that the trial court abused its discretion in determining the start date of the parties' committed intimate relationship by relying on findings of facts that contradict earlier factual findings in this case. But as stated above, the law of the case doctrine does not apply to factual findings. So, the trial court did not err on this basis. And Walsh does not argue a different ground to explain why the trial court abused its discretion in determining the start date of the parties' committed intimate relationship.

No. 57522-1-II

In *Walsh* II, the appellate court held that the trial court "must then characterize the parties' property as either community-like or separate by applying that presumption."  Slip op. at 2.  And here, the trial court did characterize the parties' property as either community-like or separate.  This complied with the mandate.

Walsh argues that the trial court did not characterize the parties' property as either community-like or separate violating the law of the case by making the following legal conclusions:

> 31.    As earlier stated, notwithstanding the alleged oral agreement, as this case arises from a dissolution of a domestic partnership, all property is before the court, community, community-like, and separate, for distribution. Thus, even if the parties had a separate property agreement, and it was enforceable, this Court's property division, as set forth in the decree entered herewith would remain the same, even if it were to result in awarding Walsh's separate property to Reynolds.
>
> 32.    In making its property division, this Court considered the factors under RCW 26.09.080. This Court finds its property division is a just and equitable division of the parties' property after a 22-year relationship and ensures that Walsh is not unjustly enriched by the fact that the bulk of the parties' relationship occurred as a committed intimate relationship prior to their short registered domestic partnership. While the Court had the character of the property in mind in dividing it, ultimately its division was intended to be just and equitable, and is just and equitable, even if it made any errors in characterizing the assets.

CP at 529.

But the trial court did properly characterize the assets.  The aforementioned legal conclusions that Walsh challenges demonstrate that the trial court believed it could distribute separate property.  Those conclusions do not show that the trial court ignored the mandate to characterize the assets.  Walsh's argument fails.

12

B.      *The Law of the Case Does Not Allow the Distribution of Separate Property*

        i. *The Effect of RCW 26.09.080*

Walsh argues that *Walsh* II held that the registration of the domestic partnership did not retroactively affect the rights of the parties' property accrued before the 2008 effective date of the amendment to RCW 26.09.080, and, so, the trial court erred by determining all of the parties' property, including separate property, is subject to distribution based on RCW 26.09.080. We agree.

Here, the trial court determined that all of the parties' property was subject to distribution because this case arose from the dissolution of a domestic partnership. RCW 26.09.080 states, "In a proceeding for dissolution of the marriage or domestic partnership, . . . the court shall, without regard to misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors."

The law of the case establishes that "RCW 26.09.080 only applies to registered domestic partnerships, and the parties did not register their partnership in Washington until 2009. *See* RCW 26.60.080 ('Any community property rights of domestic partners . . . shall apply from the date of the initial registration of the domestic partnership or June 12, 2008, whichever is later.')." *Walsh* II, slip op. at 23. While Reynolds contests the import of RCW 26.09.080, she does not argue that the aforementioned language in *Walsh* II was clearly erroneous. And so, that language remains the law of the case. Thus, the trial court's determination that all the property—including separate property—was subject to distribution because the case arose from the dissolution of a domestic partnership violates the law of the case.

13

Walsh also argues the trial court's erroneous understanding of RCW 26.09.080 caused it to improperly determine that Walsh's post-1988 SEP IRA was community-like property. It is unclear how the trial court's understanding of RCW 26.09.080 impacted its characterization of the SEP IRA. Walsh does not expound upon this argument or cite to the record to support her argument. We decline to review this bold assertion. *State v. Tinker*, 155 Wn.2d 219, 224, 118 P.3d 885 (2005) ("'Without adequate, cogent argument and briefing, this court should not consider an issue on appeal.'") (quoting *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990)).

ii. *Only Community-Like Property Acquired During the Parties' Committed Intimate Relationship is Subject To Equitable Distribution*

More generally, Walsh argues that the law of the case is that only community-like property acquired during the parties' committed intimate relationship is subject to equitable distribution. We agree.

In *Walsh* II, the court held, "[w]ith respect to property acquired during the parties' committed intimate relationship, only property characterized as community-like property is subject to equitable distribution." Slip op. at 23. This is the law of the case. Walsh is correct that conclusions of law 28, 31, and 32 in the 2022 F&C-RDP contravene the law of the case—to the extent they suggest that separate property acquired during the committed intimate relationship is subject to equitable distribution. And so, the trial court erred by making those conclusions.

While the trial court did rule that it could award separate property to Reynolds, the trial court only awarded Reynolds half of the community or community-like property, but none of Walsh's separate property. Thus, any error is harmless.[5]

C.      *The Community-Like Property Presumption Applies to Property Acquired While the Couple Lived in California*

Walsh argues that there is no community-like property presumption for the property the couple acquired while living in California from 1988 to 2000—the SEP IRA.[6] Rather, Walsh argues, under California law, property acquired by the couple in California is presumptively separate unless Reynolds proves a contract to the contrary. Reynolds argues that the law of the case required the trial court to apply the community-like property presumption to property the parties acquired in California. We agree with Reynolds.

In *Walsh* II, Walsh argued "that we wrongly held that Washington common law applied to property acquired before the parties moved to Washington, asserting that community property principles did not apply to property acquired in California under California's statutory scheme at the time." *Id.* at 14. The *Walsh* II court responded that the court in *Walsh* I held that the committed intimate relationship doctrine applied to the property the parties acquired in California. *Id.* And the *Walsh* II court concluded that Walsh failed to show that its application

---

[5] Walsh argues that the trial court erred in asserting authority over the parties' separate property. But because the trial court did not award Reynolds any of Walsh's separate property, this argument is of no import.

[6] This argument appears to implicate Walsh's assignments of error to conclusions of law 22(14) and (16) in the 2022 F&C-RDP.

of the committed intimate relationship doctrine to the property the parties acquired in California was clearly erroneous, so it declined to revisit its holding from *Walsh* I. *Id*. at 15.

Finally, the *Walsh* II court held, "The trial court must apply the presumption that all property acquired during the committed intimate relationship is community-like." *Id*. at 2. Thus, the law of the case is that the community-like property presumption applies to property the parties acquired in California. In the present appeal, Walsh does not argue that the prior determination was clearly erroneous. Instead, Walsh fails to recognize that the court made this holding in *Walsh* II, and Walsh attempts to reargue why such a presumption does not apply under California law. Because Walsh fails to explicitly argue that the holding in *Walsh* II was clearly erroneous and because Walsh has already argued in a prior appeal that the court wrongly held that Washington common law applied to property acquired in California, we decline to revisit the holding in *Walsh* II that the community-like property presumption applies to property acquired in California.

D.    *The Trial Court's Determination That the Alleged Oral Separate Property Agreement Would Be Substantively Unfair Did not Violate the Law of the Case.*

Walsh argues that the trial court violated due process by ruling that the alleged oral separate property agreement would be substantively unfair.[7] Walsh does not cite authority for this proposition. Walsh's only argument to this end is that we rejected her due process arguments in *Walsh* II because she would "'have an opportunity [on remand] to overcome the presumption that property acquired during the relationship is community-like.'" Corr. Reply

---

[7] At the trial court, Walsh agreed that part of the trial court's duty on remand was to determine the "existence *and fairness*" of the alleged separate property agreement. RP at 6 (emphasis added).

Br./Resp. Br. of Appellant/Cross-Resp't at 32 (quoting *Walsh* II, slip op. at 27). Thus, it appears Walsh is arguing that the trial court's conclusion that the alleged oral separate property agreement would be substantively unfair prevented her from having an opportunity on remand to overcome the community-like property presumption. We disagree.

On remand, Walsh argued and presented evidence to show the existence of an oral separate property agreement to overcome the community-like property presumption. The trial court ruled that she failed to prove a separate property agreement. This procedure complied with due process. The remand proceedings gave Walsh the opportunity to overcome the community-like property presumption.

Our opinion in *Walsh* II does not suggest that concluding that the alleged oral contract would be procedurally and substantively unfair violates due process.[8] Indeed, our opinion specifically states that "The trial court must also evaluate such an agreement for procedural and substantive fairness." Slip op. at 11. And the trial court's determination that the alleged agreement would have been substantively unfair did not prevent Walsh from attempting to prove the existence of a mutual oral separate property agreement on remand.

And more generally, Walsh failed to cite any authority to show that finding the alleged agreement substantively and procedurally unfair would violate due process. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

---

[8] Thus, we reject Walsh's challenges to conclusions of law 25-28 in the 2022 F&C-RDP on this basis.

Thus, the trial court's determination that the alleged contract was neither substantively nor procedurally fair did not violate the law of the case, and Walsh otherwise failed to demonstrate that the determination violated her due process rights.

E.      *The Trial Court's Determination That Walsh Failed to Prove the Alleged Oral Separate Property Agreement Did Not Violate the Law of the Case*

Walsh appears to argue that the trial court violated the law of the case by determining that Walsh failed to prove the existence of a separate property agreement. In making this argument, Walsh predominately relies on the 2017 factual finding of the trial court that Walsh proved by clear and convincing evidence that the parties agreed to something akin to an oral prenuptial separate property agreement, which the parties complied with throughout their relationship, and the finding that the parties intended to maintain separate property with limited exceptions. We disagree.

Walsh contends that factual findings establish a law of the case. However, "[t]he [law of the case] doctrine does not apply to factual findings." *Pac. Coast Shredding*, 14 Wn. App. 2d at 503. As Walsh bases her argument only on factual findings of the trial court to which the law of the case doctrine does not apply to, her argument fails.

Walsh also appears to argue that the trial court violated the law of the case because the trial court relied on testimony from Reynolds that contradicted previous unchallenged findings in this matter in determining that Walsh failed to prove a separate property agreement existed. Walsh primarily argues that Walsh's testimony was not in line with previous factual determinations in this case. But again, the law of the case does not apply to factual findings. So, this argument is unpersuasive.

18

Whether the trial court erred in finding that Walsh did not prove an oral separate property agreement is a separate issue that we discuss below.

F.      *Federal Way Property Distribution*

i. *The* Walsh *II Opinion Allowed the Trial Court to Redetermine the Percentage of the Sale Proceeds Walsh Was Entitled to*

Walsh argues that the trial court violated the law of the case by changing the original distribution of the proceeds of the Federal Way property from the first trial court's distribution, which was affirmed on appeal as just and equitable.[9]  We disagree.

As stated above, the trial court "may exercise discretion where an appellate court directs it to 'consider' an issue," provided it adheres to the appellate court's instructions.  *McCausland*, 129 Wn. App. at 399.

In the original dissolution action, the trial court "awarded Walsh an initial $40,834.42 from the sale of the house for mortgage payments on the home before January 1, 2005; and [] divided the remaining proceeds 51.89 percent to Walsh and 48.11 percent to Reynolds." *Walsh* I, 183 Wn. App. at 839-40 (footnote omitted).  The court affirmed the distribution of the Federal Way property as the division was just and equitable based on the needs and contributions of the parties.  *Id*. at 855.

In *Walsh* II, the appellate court remanded with the instructions for the trial court to apply the community-like property presumption, characterize the assets, and "distribute the property

_____

[9] This argument implicates (1) assignment of error to conclusion of law 22(38) in the 2022 F&C-RDP, which assigned the new distribution percentages for the Federal Way residence; and (2) assignments of error to conclusions of law 9(7) and 10(3), which both dealt with the amount of community property and separate property stemming from the sale proceeds of the Federal Way property, in the October 2022 order on the motion for reconsideration.

accordingly." Slip op. at 2. On remand, the trial court determined the Federal Way property produced $476,835.89 in community-like property and $142,270.53 in Walsh's separate property based upon her payments to the principal mortgage balance following the parties' separation. The trial court then awarded Walsh $142,270.53 and "50% of the remaining net proceeds at the time of sale in 2013." CP at 666.

Because the court in *Walsh* II remanded for the trial court to characterize the assets and "distribute the property accordingly," the trial court had discretion to engage in a different distribution of the community-like assets than the first trial court because the opinion directed it to consider the distribution issue. Slip op. at 1-2. So, the law of the case did not prevent the trial court from deviating from the percentage awarded in the first trial. And Walsh does not argue that the trial court abused its discretion in determining that she was entitled to 50 percent of the remaining net sale proceeds. Accordingly, it was not error for the trial court to award 50 percent of the remaining net sale proceeds to Reynolds.

ii.     *The Trial Court Did Not Violate the Law of the Case by Determining Walsh's Separate Property Interest in the Federal Way Property*

Walsh argues that the trial court violated the law of the case in determining that Walsh had only contributed $90,000 in separate property from the inheritance from her father to the

No. 57522-1-II

Federal Way property mortgage.[10] Walsh also appears to argue that the trial court violated the law of the case in determining that the $30,000 from inherited funds was not her separate property. The basis of these arguments is that the trial court on remand should have been bound by the 2012 trial court's findings and conclusions in this case. We disagree.

In *Walsh* II, we remanded for the court to characterize the parties' property as either community-like or separate after applying the community-like property presumption and then distribute the property accordingly. Slip op. at 1-2. Because our remand ordered the trial court to characterize and then distribute the parties' property, the trial court had discretion to do exactly that. The trial court was necessarily not bound by the original trial court's determinations regarding the character and proper distribution of the assets. Walsh's arguments to the contrary fail.

---

[10] Related to this argument, Walsh argues the court erred in its conclusion of law 22(39) and (40) in the October 2022 order on the motion for reconsideration. Conclusion of law 22(39) provided, in pertinent part,

> This court also finds that the purchase of the 20 acres in Fresno County, CA took place during the committed intimate relationship. It is presumed a community-like asset. Dr. Walsh did not produce sufficient evidence that it be treated as her separate property. While Dr. Walsh deposited separate funds of $131,716.22 to the USAA investment account in 1995, those funds were commingled with the substantial funds already held in the account which are presumed community-like. Further, funds used for the 1997 purchase of the 20 acre Fresno property were in excess of Dr. Walsh's 1995 deposit. . . . [E]ven if Dr. Walsh could establish separate funds were used to purchase the Fresno property, it would have been a gift to the "community."

CP at 571-72. Walsh asserts that the trial court confused the "previously undisputed inheritance . . . as being related to the purchase of 20 aces in Fresno, California." Amd. Br. of Appellant /Cross-Resp't at 53. The import of Walsh's argument is not clear. And she does not develop it further to present a cogent argument as to why conclusion of law 22(39) is erroneous. Thus, we decline to review this argument except as addressed above. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

21

II. SUBSTANTIAL EVIDENCE SUPPORTS THE FINDING THAT WALSH FAILED TO PROVE A SEPARATE

PROPERTY AGREEMENT

Walsh argues that the trial court erred by finding that no oral separate property contract existed because Walsh submitted proof of such an agreement through 22 years of performance of the alleged agreement.[11] We disagree.

We review de novo the trial court's characterization of property as community or separate, but we review the factual findings supporting that determination for substantial evidence. *In re Marriage of Mueller*, 140 Wn. App. 498, 504, 167 P.3d 568 (2007). "Substantial evidence is that 'quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *In Re Dependency of A.M.F.*, 23 Wn. App. 2d 135, 141, 514 P.3d 755 (2022), *aff'd*, 1 Wn.3d 407 (2023) (quoting *Sunnyside Valley Irr. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). "Where the fact at issue must be shown by clear, cogent, and convincing evidence, substantial evidence must demonstrate that fact is 'highly probable.'" *Id.* (internal quotation marks omitted) (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). We defer to the trial court's credibility determinations. *Id.*

"The common law of committed intimate relationships can apply when the couple's relationship preceded a marriage or when the parties were never married." *Walsh* II, slip op. at 9. "Upon finding the existence of a committed intimate relationship, the court must presume that all property acquired during the relationship is community property subject to equitable distribution." *Walsh* II, slip op. at 29. Then the court must characterize the parties' property as either separate or community-like property. *Walsh* II, slip op. at 9.

---

[11] This argument implicates conclusions of law 22(17-24) in the 2022 F&C-RDP.

"[O]ne spouse's control over community funds does not change the character of the property." *Mueller*, 140 Wn. App. at 504. "A spouse seeking to enforce an agreement, whether oral or written, that purports to convert community property into separate property must establish with clear and convincing evidence both (1) the existence of the agreement *and* (2) that the parties mutually observed the terms of the agreement throughout their marriage." *Id*. (emphasis added). Division One of this court has concluded a party that was in a committed intimate relationship may rebut the community-like property presumption by making the clear and convincing evidence showing of a separate property agreement. *In re Parentage of G.W.-F.*, 170 Wn. App. 631, 634, 285 P.3d 208 (2012). If the party establishes that such an agreement exists, the trial court must evaluate the agreement for procedural and substantive fairness. *Id*. at 645.

In *G.W.-F*, the trial court found that the parties formed an oral agreement regarding their separate and community-like property. *Id*. at 636. Division One affirmed, reasoning that there was substantial evidence to support that finding because (1) both parties' testimony demonstrated that they had agreed to contribute equally to paying for their household and childcare expenses while maintaining separate assets; and (2) evidence showed how the parties avoided commingling their individual and joint assets for their entire relationship. *Id*. at 640-41. Notably, Division One emphasized that the trial court relied on the "'highly credible'" testimony of the husband regarding the existence and terms of the oral agreement. *Id*. And the wife "did not deny that an oral agreement existed with [the husband]." *Id*. at 642.

In *Mueller*, Division One held the evidence was insufficient to support a finding that an oral agreement to divide the husband's income was an agreement to change the presumptive character of the parties' property to community property. 140 Wn. App. at 503. Division One

23

emphasized that the husband failed to prove by clear and convincing evidence the existence of a separate property agreement, but he just showed "that they agreed to manage their community income separately." *Id*. at 506.

To show that substantial evidence did not support the trial court's finding that Walsh failed to meet her burden, Walsh relies on (1) the parties' efforts in keeping their income and property separate over the course of the relationship, and (2) the related finding that the parties generally intended to maintain separate assets. Walsh maintains that this information is relevant to proving the existence of the alleged oral separate property agreement. Although we agree that the information is relevant to proving the existence of an oral agreement,[12] that does not mean that the information is dispositive of whether such an agreement exists under the circumstances.

Here, Walsh was the only party to testify to the existence of the separate property agreement. Reynolds testified that no such agreement existed, unlike in *G.W.-F*. And the trial court found Walsh's testimony regarding the alleged oral separate property agreement was not credible, unlike in *G.W.-F*. We defer to the trial court's credibility determination.[13] Evidence that the parties separated their assets, while relevant to, is not dispositive of the existence of an oral agreement.

Additionally, the trial court rejected the existence of such an agreement for several reasons. The trial court recognized that (1) the parties maintained separate financial accounts;

---

[12] *See G.W.-F.*, 170 Wn. App. at 639.

[13] In an unrelated section of the appellant's brief, Walsh asserts that we should not defer to this credibility determination because "the record demonstrates that finding in this case to be an abuse of discretion." Amd. Br. of Appellant/Cross-Resp't at 50. But "We cannot review a fact-finder's credibility determinations on appeal." *In re Vulnerable Adult Petition for Winter,* 12 Wn. App. 2d 815, 839, 460 P.3d 667 (2020).

(2) Walsh paid for the following out of her income: the mortgage, taxes, insurance, and private school tuition; and (3) Walsh treated Reynolds as her employee, paying her a salary for certain services. But the court explained that merely because the parties kept their property separate does not prove that the parties had a mutual agreement to keep their property separate, concluding that such reasoning was circular.

The trial court also emphasized that "Walsh's unilateral control over her earnings by depositing them in accounts in her name only, paying the parties' shared expenses, and even paying Reynolds a 'salary' for keeping up the family home, is not clear and convincing evidence that the parties entered into a separate property agreement." CP at 528. Finally, the trial court pointed out, "While Reynolds' yield of any control over what would otherwise be community-like property may show her intent that Walsh handle all of the finances while Reynolds maintained the home and cared for the children, it does not show an intent to transform the character of property that would otherwise be community-like property [or] separate property." CP at 528. Finally, the trial court ruled that even if a separate property agreement existed, it would be unenforceable for being neither substantively nor procedurally fair.

We find the trial court's reasoning on this matter persuasive. Substantial evidence exists to support the finding that Walsh failed to prove a mutual oral separate property agreement by clear and convincing evidence. Because we affirm the trial court's conclusion that Walsh failed to prove a separate property agreement, we need not address whether the trial court's finding that such an agreement would be substantively and procedurally unfair provides an alternative basis for affirming. Likewise, we need not address Reynold's argument that we should affirm the trial court's intended property division because the trial court found that its division was just and

equitable regardless of any asset mischaracterization because Walsh failed to show that the trial court mischaracterized any assets.

### III.  JUDICIAL ESTOPPEL WAS NOT RAISED BELOW

Walsh appears to argue that Reynolds is judicially estopped from taking various positions that Reynolds took on remand.

We may refuse to review claims of error which were not raised below, subject to certain exceptions, under RAP 2.5(a); *State v. O'Hara*, 167 Wn.2d 91, 94, 217 P.3d 756 (2009).  Walsh did not argue that Reynolds was judicially estopped in any capacity below.  And Walsh does not address RAP 2.5 on appeal.  We decline to address Walsh's unpreserved arguments regarding judicial estoppel on this basis.

### IV.  CROSS-APPEAL

Reynolds argues that the trial court erred in adopting Kessler's calculations for the present value of the amount owed to Reynolds from the GHP Pension and the 401k salary deferral plans—now T. Rowe Price Account—and the USAA Investment Account—now the Schwab One Investment Account.  We disagree.

We review a trial court's disposition of property under RCW 26.09.080 for an abuse of discretion.  *In re Marriage of Farmer*, 172 Wn.2d 616, 624, 259 P.3d 256 (2011).  "The trial court's paramount concern when distributing property in a dissolution action is the economic condition in which the decree leaves the parties."  *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997).

Methods for valuing assets of changing value vary widely.  *Farmer*, 172 Wn.2d at 627.  We will not disturb the trial court's valuation if it was within the range of credible evidence.  *In*

*re Marriage of Sedlock*, 69 Wn. App. 484, 490, 849 P.2d 1243 (1993); *see also In re Marriage of Mathews*, 70 Wn. App. 116, 122, 853 P.2d 462 (1993). We are "hesitant to second-guess a trial court's equitable distribution of other assets that pose difficult valuation problems." *Farmer*, 172 Wn.2d at 631.

> [E]xperts have developed a variety of highly complex models for valuing stock options. This is an evolving science that is properly addressed through expert testimony. To the extent parties desire to scrutinize and critique different valuation models through dueling expert testimony, we think the trial court provides the appropriate forum.

*Id*. at 633. Indeed, "It is the province of the trial court, and not this court, to weigh the expert testimony." *Sedlock*, 69 Wn. App. at 498. To that end, "[t]he factfinder is given wide latitude in the weight to give expert opinion." *Id*. at 491.

Reynolds cites one case to support her arguments: *Guard v. Town of Friday Harbor*, 22 Wn. App. 758, 592 P.2d 652 (1979). In that case, Division One wrote, "a finding of fact which is without any support in the record cannot stand." *Id*. at 766. That statement is the only rule statement upon which Reynolds relies. The issue in *Guard* was whether there was sufficient evidence to support a finding regarding policy duty training, which is completely unrelated to the present matter. *Id*.

Regarding both the GHP Pension and the 401k salary deferral plan and the USAA Investment Account, we recognize there may have been errors in Kessler's determination of the present-value of Reynold's interest in those accounts. But we do not disturb valuation decisions if they are within the range of credible evidence. And here, the trial court relied on expert testimony—Kessler's declaration, testimony, and exhibits—to determine the present value of Reynolds's share of both of the challenged accounts. That expert testimony is generally within

the range of credible evidence. And so, we are reluctant to substitute our judgment for that of the trial court. Reynolds invites us to do so, arguing that Kessler based his calculations on the wrong information, made errors in determining the losses in account value, and made errors in tracing certain portions of the account value, among other things. Walsh argues that we should defer to the trial court determination on which expert was more credible. We agree. The trial court is the appropriate forum to determine which expert is more credible and reliable. We affirm the trial court's valuations of the GHP Pension and the 401k salary deferral plan and the USAA Investment Account as they were within the range of credible evidence.[14]

## ATTORNEY FEES

Reynolds asks us to award her attorney fees on appeal based on her need and Walsh's ability to pay, citing RCW 26.09.140 and because of Walsh's intransigence in bringing a frivolous appeal.

RCW 26.09.140 provides, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." "Thus, we have discretion to award attorney fees after considering the relative resources of the parties and the merits of the appeal." *Walsh* I, 183 Wn. App. at 858. Because Reynolds prevails on appeal, we grant her attorney fees and costs relating to responding to Walsh's appeal. But because Reynolds does not prevail on her cross appeal, she is not entitled to

---

[14] Reynolds also argues that Walsh failed to prove her separate interest in the USAA Investment Account by clear and convincing evidence because she failed to produce the necessary statements. But Walsh did not have a burden at this stage in the trial to prove her separate property interest in that account. The trial court had already determined the community and separate property interest in the USAA Investment Account as of the separation. At this stage, the only dispute was the present value of those assets and the proposed distribution—not the character of the assets. Thus, Reynolds argument fails.

attorney fees related to her cross appeal. We decline to award fees based on intransigence because Reynolds failed to develop a cogent argument with citation to relevant legal authorities regarding this basis. *See* RAP 10.3(a)(6).

## CONCLUSION

We affirm and grant Reynolds attorney fees and costs on appeal for responding to Walsh's appeal, but not attorney fees related to her cross appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Maxa, J.

_____
Veljacic, A.C.J.